## COIRON *v.* MILLAUDON et al.

The syndic is a mere nominal party to a tableau of distribution of the effects of an insolvent, except so far as his claims for commissions &c., are concerned. The creditors, *inter se*, are the real parties litigant.

Where, after the death of the syndic of the creditors of an insolvent, an account of his ad- ministration as syndic is presented by his executor, with a tableau of distribution, which is litigated and homologated, the creditors not having deemed it for their interest to provoke the appointment of another syndic, one who holds a debt which, at the time of the cession, belonged to a creditor who was represented by the attorney of absent creditors, will be concluded by the judgment of homologation in any attempt to annul a sale made by the syndic. Objections to the proceedings should have been made before they were closed by the distribution of the proceeds of the property sold.

Where a court, which had accepted the cession of the property of an insolvent, homologates a tableau distributing the proceeds of the sale of the property surrendered, the judgment of homologation will be conclusive upon creditors who were parties to it, in the absence of any fraud or collusion, and though the sale was made without any order of court. *Per Curiam :* The court having distributed by its decree the proceeds of the sale of the property, as such —*eo nomine*—the sale itself and the right to sell were thereby settled. The creditors who received the proceeds, and those who sanctioned the appropriation to debts which they had an interest in discharging, are equally bound by the judgment, the law considering them parties to it.

Where the validity of the sale of the effects of an insolvent is attacked on the ground of the nullity of the whole proceedings in consequence of the creditors not having been cited, ev- idence of meetings of the creditors, held under orders of court, who advised a sale and fixed the terms, and of the homologation of the tableau, are sufficient to sustain the sale.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Gedge*, for the appellant.

*Benjamin* and *Micou*, for the defendants. At the date of *Coiron's* ces- sion, in July, 1833, the debt now claimed by *Mrs. Coiron* belonged to *Bouchard*. He was an absent creditor, cited through the attorney ap- pointed by the court to represent the absent creditors; but, as an ab- sent creditor, he had a right to decline any participation in the insolvent pro- ceedings, and to prosecute his remedy in the Federal court. He selected that course, and refused to become a party to the *concurso*. In the mean time the property surrendered was sold. It was not in his power, after the sale of the property in the State court, to come into that court, and complain of what was

done by the other creditors and their syndic, during the period in which he had been prsoecuting his rights in the Federal court. *Mrs. Coiron*, if subrogated to his rights, is equally without capacity to sustain such complaint. *Riley* v. *Laman*, 2 Cranch, 344. *Sturges* v. *Crowninshield*, 4 Wheaton, 122. *Farmers' Bank* v. *Smith*, 6 Ibid. 131. *Ogden* v. *Saunders*, 12 Ibid. 213. *Clay* v. *Smith*, 3 Peters, 411.

The effect of any judgment in favor of plaintiff in the present action, would be to break up all the proceedings in *Coiron's* failure, and to vest the title to the property in his creditors. What right has one creditor to sue for the rest? The settled jurisprudence of the State, refuses such an action to any other than a syndic. *Dussau* v. *Bredeaux*, 4 Mart. 450. *Pimpinella* v. *Lanusse*, 6 Mart. N. S. 125. *Mayfield* v. *Comeau*, 7 Mart. N. S. 182. *Lillard* v. *Tarbe*, 15 La. 422.

The nullity or informality complained of, i. e. the want of an order of sale signed by the judge, does not exist. No order of court was necessary for the sale, under the law as it existed at the date of the sale. Act of 1817. C. C. 2180. Act of 1826, sec. 3, Bul. & Cur. p. 496.

Under our jurisprudence, the judgment homologating the tableau forms a complete bar as *res judicata* against plaintiff. *Morgan* v. *Creditors*, 4 La. 174. *Ory* v. *Creditors*, 12 La. 121. *Lang* v. *Creditors*, 14 La. 237. *Smith* v. *De Lallande*, 1 Rob. 384. *Egerton* v. *Creditors*, 2 Rob. 539. Story on Equity, v. 1, p. 375.

The judgment of the court was pronounced by

Eustis, C. J. On the 17th of July, 1833, *Jean Joseph Coiron*, since deceased, the former husband of the plaintiff, made a surrender of his property in the court of the first judicial district. The judge made the usual order on the application, accepting the cession, directed a meeting of the creditors to be convened, and appointed an attorney to represent the absent creditors. The property was afterwards sold, and the proceeds distributed under a tableau of distribution, which, after due notice, was homologated. *Coiron* died in September, 1833, leaving a widow and four children. His succession was opened in the parish of his domicil, and the plantation and slaves, which are the subject of the present suit, were inventoried as belonging to his succession. The plaintiff, the surviving widow, has brought this suit, as a creditor of her late husband, to vacate and annul the sales of the property ceded to the creditors by the insolvent, to wit: a valuable plantation, with the slaves, situated in the parish of Plaquemines, on various grounds set forth in the petition and the printed argument of counsel.

The district judge was of opinien that the homologation of the tableau of distribution of the proceeds of the property sold among the creditors, was a bar to the plaintiff's action, and gave judgment accordingly. There were other creditors who were made defendants, but the only parties who have appeared before us on this appeal, taken by the plaintiff, are *Millaudon & Lesseps*, the purchasers of the plantation and slaves.

The heirs of the insolvent do not attempt to disturb the sale, nor does the plaintiff present herself in any other right than as a creditor of her late husband. The fact of her being a creditor is directly put at issue by the pleadings, and the only evidence of it is the payment by her of a judgment, in May, 1834, which was in favor of *Joseph Bouchard*, and against her and her husband *in solido*.

At the time of the cession, July, 1833. the debt which the plaintiff now holds, was due to *Bouchard*, who was a citizen of the State of New York. He obtained his judgment in the Circuit court of the United States for this district. But in relation to the property comprized in the cession made by the insolvent, he must be considered as represented, so far as concerns his interest therein,

COIRON
v.
MILLAUDON.

by the attorney appointed by the court to represent the absent creditors. Waiving the question which has been raised as to the plaintiff's not having become a creditor until after the cession, we proceed to consider the case as presented in the argument on the point on which the district judge decided it, as to the effect of the tableau of distribution.

It is contended by the counsel for the plaintiff that there was in fact no legal tableau of distribution, it having been made and presented, not by a syndic, but by the executor of the syndic, who had died, and whose appointment had not been replaced by the creditors. The light in which a tableau of distribution of an insolvent's effects is viewed under our system renders the the syndic a mere nominal party, except so far as his claims for commissions, &c., are concerned. The creditors, *inter se*, are the real parties litigant. *Morgan* v. *Creditors*, 4 La. 174.

In the case of *Smith* v. *Poydras*, 1 Rob. 384, it was held that, where the creditors of an insolvent having appointed two persons joint syndics, remain silent while one of them causes himself to be recognized as sole syndic, sells the property, and files the tableau of distribution, which is homologated without opposition, they will be considered as having ratified his acts, and be bound by their silence. And this decision was not assumed to be based on any authority on the part of the court to appoint the syndic, but on the principle of ratification, and that it was incumbent on the creditors to have objected to the proceedings, before they were closed by the distribution of the proceeds of the property sold. The application of that principle to this case is direct and obvious. The syndic having died, his executor presented to the court an account of the administration of the syndicate by the deceased, and with it a tableau of distribution which was litigated and finally adjudicated upon. The creditors did not deem it for their interests to provoke the appointment of another syndic, and the administration of the deceased syndic, as exhibited by the executor, was acted upon, and the tableau of distribution homologated.

It is further contended, on the part of the plaintiff, that there was no sale of the property surrendered; that the whole proceedings are null and void, in consequence of an absence of those requisites which are necessary to give them validity. The most material defect, and that most relied on in argument, is the want of any order of court authorizing the sale. The property was ceded by the insolvent for the purpose of being sold to pay his debts, and the creditors had fixed upon the terms and conditions of the sale. The *D'Aquins*, who were mortgage creditors, opposed the sale as recommended by the creditors, and required the property subject to their mortgage to be sold separately. Their opposition was filed, in February, 1834, and was overruled on the 12th March, 1835, the sale having in the mean time taken place, to wit: on the 6th of March, 1834. It appears that an application to the court was made on the day of the sale, for authority to sell according to the terms dictated by the creditors before the notary, and an order was made by the judge to that effect: but on signing it and handing it to the clerk, he was apprized of the opposition of the *D'Aquins* having been filed. The order was erased, and a memorandum made of the erasure and its cause was signed by the judge at the time. On a hearing the opposition was dismissed, notwithstanding the sale had been made, the judge considering the matter before him as on the opposition, unaffected by the fact of the sale, which was not before him. In this state of things, the judge, on the 25th of November, 1837, acted on the tableau of distribution presented by the executor as before stated, overruled the opposition of creditors claiming a priv-

ilege., homologated the tableau, and ordered the *executor of the syndic to pay over the moneys of the estate* in accordance therewith.

It thus appears that this judgment homologating the tableau was deliberately rendered, in the presence of the fact of the want of any order of the court authorizing the sale; and however irregular the proceedings may have been, there does not appear to us to have been any fraud in the sale, or collusion between the syndic and the purchasers. It appears to have been conducted fairly, and more than usual publicity was given to it by way of advertizements.

It is obvious that, under the repeated decisions of the Supreme Court and the principles on which these decisions are based, we must hold the creditors of the insolvent bound by this judgment of distribution. The plaintiff was present and must be considered as a party to it, for, by her own allegations, she was at the time of its rendition a creditor. The required notices are proved to have been given, and the order of the court for the creditors and all others concerned to show cause why the tableau should not be homologated and distribution made accordingly, recited the fact that the former was presented by the executor of the deceased syndic.

The court having advisedly distributed by its decree the proceeds of the sale of the property as such, *eo nomine*—the sale itself and the right to sell was thereby settled and determined, and from that time must be viewed as having been made under sufficient authority. As to those creditors who received the proceeds there can be no question; and we think the creditors who thus sanctioned the appropriation of the proceeds for their benefit, that is for debts which they had an interest in having discharged, are equally bound by the judgment, as the law considers them as parties to it.

In the sale of property ceded by insolvents to their creditors, it is undoubtedly competent for any creditor, previous to the homologation of the tableau of distribution, to cause a resale of property surrendered on any adequate or legal cause. Up to that time the court, having all the parties before it, has the power to cause the price to be refunded to the purchaser, and to have the things put in *statu quo*. But, after that time, we concur with the district judge in opinion that, the sale must be considered as executed under the authority of the court itself, and cannot be considered as a nullity.

It is also urged, on behalf of the plaintiff, that the whole proceedings are null, in consequence of the creditors not having been cited. On this point there is no evidence adduced. There were two regular meetings of creditors held under orders of court, who advised the sale and fixed the terms thereof. In a question concering the validity of the discharge of the insolvent, this enquiry might be material, under the authority of the case of *Breedlove & Robeson v. Nicolet*, 7 Peters, 434. But in relation to the validity of the sale of the insolvents' estate, we think the meetings of the creditors and the homologation of the tableau are sufficient.

In resting this case on the decision of the district judge, we must not be considered as conceding the right of action to the plaintiff to rescind this sale. Without noticing the pleas of prescription filed by the defendants, it is sufficient to state that she alone of the creditors seeks before this court to set aside the sale, and to disturb the payments made under the sanction of a court; nor does she offer or provide the means of restitution of the purchase money to the defendants. The proceeds of the sale were not sufficient to pay the privileged and mortgage creditors; a balance still is due them according to the tableau.

The parties to whom any surplus on a resale would come do not choose to disturb the sale, under the obligation of restitution and praying for improvements which the purchasers may have made upon the property ; nor is there any evidence that the property was not sold for its just value, nor that, at this remote period, any creditor would be benefited by a resale.

In a case of collusion between the syndic and a purchaser, wnere a fraud has been practiced upon creditors, we have no doubt of the remedy of the latter individually; but in this case, the evidence establishes neither. We can find no precedent of such an action having been sustained. Story's Equity Pleadings, § 503, 510, and 516.       *Judgment affirmed.*