## No. 6517.

SUCCESSION OF FRANÇOIS BOUGÈRE. ON OPPOSITION OF AMÉLIE RICHARD.

The public notification of the filing of an account, and tableau of distribution by an administrator, operates as a legal citation to creditors and legatees.

An administrator need not directly prove up every item of his account, which is not opposed.

A judgment homologating the account of an administrator can only be rendered in *term* time, and in *open court*. It can not be rendered by the parish judge in vacation, or in chambers.

APPEAL from the Parish Court, parish of St. Charles. *Earhart*, J.

*C. F. Claiborne, M. Marks*, and *James D. Augustin*, for executor.
*Breaux, Fenner & Hall*, for opponent.

### ON MOTION TO DISMISS.

The opinion of the court was delivered by

MANNING, C. J. Achille D. Bougère filed a tableau of distribution of the succession of François Bougère, in his capacity of dative testamentary executor thereof, on July 3, 1876. Notice of the filing was published, and on the nineteenth of the same month, no opposition having been filed, the tableau was homologated. On the twenty-second of the same month Amélie Richard filed an opposition to the tableau. She is as-

signee of Elie Bougère, who is one of the legatees of the deceased. The assignment of Elie Bougère is not contested on the one hand, and on the other it is conceded that the opponent has only such rights as her assignor had.

The executor moves to dismiss the appeal of opponent, for the reason that she has no interest in the affairs of the succession.

On the fourteenth of February, 1876, a decree was entered in the suit No. 5475 of the docket of this court, entitled " Succession of François Bougère," on the opposition of Elie Bougère and others, appellants, in which a motion to dismiss was likewise made. The following extracts from the opinion then read are pertinent to the present controversy:

" The appellee moves to dismiss the appeal on the grounds following:

" First—That the appellants have voluntarily executed the judgment appealed from and have voluntarily acquiesced in and ratified its execution. * * *

" Third—That the claim of Achille Bougère, Marguerite Bougère, *Elie Bougère* has been settled since this appeal was granted, as per affidavits and exhibits hereunto annexed.

" Fourth—That the appeal was granted to above parties upon condition that they should furnish bond; * * * and that they settled their claim and acquiesced in the judgment."

Other grounds are set forth, not relating to Elie, and the court proceeds: " The executor rendered an account which was homologated. In it he had made a distribution or partition of the property among the legatees, after paying creditors. Some time after this judgment *Elie,* Marguerite, and Achille obtained an order for a suspensive appeal, but they subsequently received from the executor the shares or amounts adjudged to them by the judgment." That appeal was dismissed because of the voluntary execution of the judgment.

An appeal in another suit, No. 5872, was decided at the same time. A petition had been filed by Elie Bougère praying the dismissal of Filleul, the testamentary executor, and a judgment had been rendered to that effect, and also appointing Elie Bougère executor of the succession, and ordering its assets, including a considerable sum of money in bank, to be delivered to him. This was pending the appeal of the case just noted. A prohibition was prayed and obtained by Filleul against Elie Bougère and the judge who had granted these orders and rendered the judgment of dismissal, upon presenting a petition in which is this allegation: " That he has duly administered said estate and filed his account and tableau of the full assets of the succession in cash, and credits, and values, which was duly homologated by final judgment of the parish court, the oppositions to which were all dismissed, and the oppo-

nents took devolutive appeals, which are now pending." Further proceedings by the judge and the contestants were arrested by the writ of prohibition, and on the hearing in this court the writ was made peremptory on the same day that the decree was rendered on the oppositions to the account.

The counsel for the executor is in error in his position that this court decided in the suit involving the account and the oppositions that Elie Bougère had received his share in this succession from Filleul. The language of the court is that Elie and his co-opponents subsequently received from the executor the shares or amounts *adjudged to them by the judgment; i. e.*, the judgment on the account of Filleul rendered in 1875. The counsel is also in error in supposing that in the prohibition the question of interest was either directly or indirectly decided. No exception was filed by Filleul, that we have seen, on the ground that Elie Bougère had no interest in the succession. The petition praying the writ of prohibition recites the details of the litigation on the account and oppositions, and alleges that the same issues are there made as in the opponent Elie's suit for dismissal, and that all parties are awaiting the decision of the Supreme Court on the pending appeal, and the writ was granted to stay proceedings until that decision is made, which adjusted the rights of the parties, and by a construction of the will determined the interests of the various parties to the litigation.

The judgment of this court in February, 1876, was that Elie Bougère had received all that appeared to be due him by the account of Filleul, and that was embraced in it. But was that a final account and complete administration of the affairs of the succession? Manifestly not, because another executor has been appointed to complete what Filleul left unadministered, and this dative executor has had something to account for, otherwise there would be no suit before us now. The present suit has for its origin an account presented by that executor.

We are also referred to the account in this record and the receipts of Elie Bougère as supporting the averment of his want of interest. If we were to assume that the items of the account are supported by vouchers, and the distribution of assets is in accordance with the rights of the legatees, and that this account is final and nothing more remains to be administered, we could then satisfy ourselves that Elie Bougère had been paid all, and more than all, he was entitled to. His receipts exceed his share, if we are to be guided by what appears on the face of the papers. But there are no vouchers in the record, no testimony having been offered on the homologation apparently, and there is something else to administer. The acceptance of service of notice by the attorney of some of the legatees is: "Notice of the filing of this account acknowledged, citation waived, and consent that the uncollected notes be sold

as prayed for herein." Referring to the prayer thus alluded to, we find the dative executor in his petition presenting his account, and the tableau of distribution says: "As to the balance of the assets, being the uncollected promissory notes mentioned herein, owing to the difficulty of collecting the same and the injurious delay it would occasion the final winding up of the succession, the executor proposes to sell them at public auction."

We are not prepared to say that Elie Bougère has received all that he is entitled to under the showing made in the record, and is without interest further in the succession, and therefore the motion to dismiss can not prevail.

## On the Merits.

The opinion of the court was delivered by

Manning, C. J. The errors assigned, for which the opponent claims a reversal of the judgment of the parish court, are:

First—That the tableau was homologated without notice to Elie Bougère or to opponent, his assignee.

Second—The judgment of homologation was rendered and signed at chambers.

Third—Three judicial days did not elapse between the rendition of the judgment and the signing thereof.

Fourth—The judgment was rendered without proof of the correctness of any item thereof.

Answering the first objection, the executor points to the proof of the publication of the filing which we find in the record complete, and insists that such publication is notice to all persons concerned, while the opponent maintains that her assignor is an heir and entitled to special notice or citation. Elie Bougère was a legatee. He acquires his right to a part of his relative's property from a provision in the will. The notification of the filing of the account and tableau of distribution of an executor operates as a citation to all persons concerned, creditors as well as legatees, and the homologation of the account and tableau bars all further inquiry as to all matters included therein. Succession of Peytovin, 10 Rob. 118; succession of Egana, 18 An. 263.

The Code requires the judge to order, on demand of the administrator, that the creditors and legatees of the succession be notified to show cause within ten days why they should not be paid according to the tableau of distribution presented by him. C. C., article 1057, new number 1064. And in Millaudon's case it is said the published notice prevents an heir who has neglected to oppose payments to creditors from contesting their legality. 6 La. 225.

It appears the judgment of homologation was signed at chambers, and the opponent quotes article 543, Code of Practice, requiring all judgments to be read by the judge in open court. Under the constitution of 1852, which gave the Legislature authority to confer certain powers on clerks, and under the legislation subsequently had, clerks had power to homologate the accounts and tableaux of executors so far' as not opposed, and this was necessarily done in chambers. The parish judges are charged with this duty under the present constitution, and are required to hold frequent probate terms to facilitate the settlement of estates, when judgments should be entered. A judgment prepared and signed in vacation by the judge in a case in which no decree could be rendered in chambers, has no effect until entered upon the records at the ensuing court. Dorsey vs. Hills, 4 An. 106. The judgment of homologation in this case was rendered in chambers and was entered upon the records in open court at the ensuing term. It is true that in the interval between the rendition of the judgment (nineteenth of July) and the first day of the next term (twenty-fifth of July) the opposition which commenced this litigation was filed, viz.: on the twenty-second, and on the first day of the term opponent ruled the executor to show cause why the judgment should not be vacated; but we have already said the publication was notice to the legatee and to his assignee, and the opposition came too late, and the rule was still later.

On the third assignment of error, we do not think three judicial days must elapse between the homologation and signing the judgment; and to the fourth, that there was no proof of the correctness of any item of the account, the executor is not driven to proof of each separate item of his account unless it is opposed. "The presumption is in favor of the executor, who is an officer of the law, and direct proof of every item is not required," said the court in the succession of Wederstrandt, 19 An. 494.

It would have been more regular to have filed the vouchers for each item when the account was filed, and they could have been demanded by any opponent who had acted in time. Other legatees, who are more largely interested than the opponent, do not appear to have discovered the objections set forth by her, and it is undeniable that they had opportunity to object. That circumstance does not conclude opponent, for *non constat* that one legatee will not object to what another approves. But it relieves us of any apprehension that by dismissing her opposition and rule any substantial injury is done to the interests of Elie Bougère, of which she is assignee.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed with costs.

ON REHEARING.

The opinion of the court was delivered by

MANNING, C. J. A rehearing was granted of this cause because of our doubt of the correctness of the statement that the judgment of homologation was rendered and signed in vacation, and which we declared had no effect until entered upon the records of the ensuing term. We meant by this, that said judgment, thus rendered in vacation, was not complete, or, to state it more broadly and more perfectly, that the power to homologate accounts in chambers, which was formerly confided to the clerks, no longer exists, and the homologation by the parish judge under the present constitution must be made in open court, and if made in chambers in vacation derived no force or effect from that fact, but must be renewed, as it were, in open court, and spread upon the records.

We are now informed that this judgment was signed during a recess of the parish court, which had adjourned from a day anterior to the nineteenth July, the day the judgment was rendered, to the twenty-fifth of same month. It was not a new term that commenced on this latter day, but the court re-opened its existing term, and on the first day it was thus re-opened the opponent filed her opposition.

In order, however, that our ruling may be freed from any doubt, and not be confused by qualifications, we now say that the parish judges have not the right to homologate the accounts of executors in chambers. It must be done in open court. The legislation that accorded to clerks the power to homologate accounts had its origin and its excuse in the necessities of the system then established, and this power could be exercised in chambers only after a much longer publication (thirty days) than was required for homologation, made by judges in open court. This power to homologate accounts in chambers disappeared with the system of which it was a prominent as well as anomalous feature, and these judgments of the parish judges can now be made only in term.

It follows that the opposition was filed in time in the present case, for there was no judgment rendered on the twenty-fifth, when the court re-opened. The executor contented himself with producing the judgment rendered on the twenty-second, out of term, and that did not preclude the opponent from taking action against the account.

It is therefore ordered that the cause be remanded to the lower court for trial of the issues raised by the opposition of Amélie Richard, and to that end, it is adjudged and decreed that our former decree is reversed and set aside, so far as it conflicts with that now rendered, and that the succession pay the costs of this appeal.