### Succession of SPYKER.
### No. 14957.

Court of Appeal of Louisiana. Orleans.
Feb. 18, 1935.

James Wilkinson, of New Orleans, for appellant.

Azzo J. Plough and Jos. O. Schwartz, both of New Orleans, for appellee.

LECHE, Judge.

This cause was argued and submitted to this court on the following agreed statement of facts:

"Statement of Facts.

"May It Please This Honorable Court:

"In order to simplify this case and to save trouble to the Court of Appeal as well as to Counsel, it is agreed:

"That Mrs. Pauline Gilmer Spyker, Widow of Theodore S. Wilkinson, died on September 10th, 1932, in the City of New Orleans; that she left the immovable property, Municipal No. 1448 Joseph Street, New Orleans, Louisiana, as a special legacy to her nephew, James Wilkinson, Jr.; that there was a mortgage of some $2100.00 on this property; that a City tax of $145.35 fell due on the said immovable property prior to the death of Mrs. Wilkinson; that the said tax was unpaid at the time of her death.

"That the will of .the deceased Mrs. Wilkinson was duly probated, the inventory duly filed and the Canal Bank & Trust Company was duly appointed and qualified as Testamentary Executor of said Succession;

"That on the fifth day of October, 1932, the Testamentary Executor filed a provisional account; that on the said account the said City tax of $145.35 was listed under the heading of 'Debts due by this Estate' and was deducted from the residuary portion of the estate coming to the universal legatees all as will more fully appear by reference to copy of said petition and account annexed hereto and made part of this statement of facts; that the monitions for said account were duly published and that said account

was homologated by judgment of the Court on the 24th day of October, 1932;

"That in accordance with the said judgment the said Executor paid said tax soon after the homologation of said account;

"That the said Canal Bank & Trust Company, having gone into liquidation, resigned as Executor; that the National Bank of Commerce, by consent of all parties, was appointed and qualified as Executor or Administrator of this succession;

"That on the seventh day of August, 1933, the National Bank of Commerce filed the rule in controversy, to which James Wilkinson, Jr. filed exceptions and returns; that these exceptions were over-ruled by the Court and that James Wilkinson, Jr. was condemned to pay these City Taxes, all as per return and judgment in said record.

"It is agreed that the sole questions to be submitted to this Court are:

"First: Is the judgment homologating said original provisional account res adjudicata against plaintiff in rule, the present Executor?

"Second: Does the payment of said taxes under said judgment estop the present plaintiff in rule?

"Third: In the alternative, whether or not the plaintiff in rule has a right to recover these taxes from defendant in rule as due and owing by him.

"Respectfully submitted,
    "James Wilkinson, Sr.
        "[Signed] James Wilkinson
    "Attorney for defendant and appellant in rule.
"Azzo J. Plough
"Joseph O. Schwartz
    "By: [Signed] Jos. O. Schwartz

"Attorneys for plaintiff and appellee in rule."

Relative to the question of a judgment of homologation being res adjudicata, we find the following pronouncements in our jurisprudence:

"The judgment of homologation on the tableau of distribution, filed by the syndics, is, in law, a judgment in favor of each creditor to whom a dividend is assigned; and has, in relation to the proceeds in the hands of the syndics, the authority of the thing judged." Morgan et al. v. Their Creditors, 4 La. 174.

"The District Court correctly concluded these items were not authorized, no mention thereof whatever being made in the account

homologated, which forms res judicata as to the rights of the several creditors, on the proceeds of all the property surrendered." Ory v. His Creditors, 12 La. 122.

"It thus appears that this judgment homologating the tableau was deliberately rendered, in the presence of the fact of the want of any order of the court authorizing the sale; and however irregular the proceedings may have been, there does not appear to us to have been any fraud in the sale, or collusion between the syndic and the purchasers. It appears to have been conducted fairly, and more than usual publicity was given to it by way of advertizements.

"It is obvious that, under the repeated decisions of the Supreme Court and the principles on which these decisions are based, we must hold the creditors of the insolvent bound by this judgment of distribution. The plaintiff was present and must be considered as a party to it, for, by her own allegations, she was at the time of its rendition a creditor. The required notices are proved to have been given, and the order of the court for the creditors and all others concerned to show cause why the tableau should not be homologated and distribution made accordingly, recited the fact that the former was presented by the executor of the deceased syndic.

"The court having advisedly distributed by its decree the proceeds of the sale of the property as such, eo nomine—the sale itself and the right to sell was thereby settled and determined, and from that time must be viewed as having been made under sufficient authority. As to those creditors who received the proceeds there can be no question; and we think the creditors who thus sanctioned the appropriation of the proceeds for their benefit, that is for debts which they had an interest in having discharged, are equally bound by the judgment, as the law considers them as parties to it." Coiron v. Millaudon, 3 La. Ann. 664.

"The notification of the filing of the tableau operates as a citation to all persons concerned therein, creditors as well as legatees; and the homologation of the executors' account and tableau, bars all further enquiries as to all matters included in the account." Succession of Peytavin, 10 Rob. 118.

"We see no reasons for being dissatisfied with the conclusion we have arrived at, upon this point.

"It rests upon the principle, well settled in our jurisprudence, that—'the notification of the filing of a tableau operates as a citation to all persons concerned therein (creditors as well as legatees); and that the homologation of an account and tableau bars all further enquiries as to all matters included in the account.'" Succession of Juan Y. De Egana, 18 La. Ann. 263.

"We conclude, that the voluntary execution of a judgment is conclusive evidence of its being acquiesced in; that a judgment, though not strictly and technically coming within the rule of 'the thing adjudged,' can neither be attacked nor questioned by a party who has voluntarily acquiesced in it; and that a judgment acquiesced in must, as to the parties to it, have the authority of the thing adjudged; and that plaintiff, having by its own acts and its agent, the executor, executed, and thereby acquiesced in the judgment of the 11th January, 1864, pleaded as a bar to this action, is estopped from pursuing the defendant as a partner of J. Y. De Egana." Canal & Banking Co. v. M. J. De Lizardi, 20 La. Ann. 285.

"The notification of the filing of the account and tableau of distribution of an executor operates as a citation to all persons concerned, creditors as well as legatees, and the homologation of the account and tableau bars all further inquiry as to all matters included therein." Succession of Bougere, 29 La. Ann. 378.

"We have made careful investigation of the provisions of the Codes and jurisprudence on the subject, and have reached the conclusion that the judgment homologating an account, purporting to distribute proceeds among creditors, constitutes res judicata in respect to the validity of their claims, notwithstanding that the fact of their payment is left open to direct attack by heirs, prior to final settlement of the succession." Succession of Conrad, 45 La. Ann. 89, 11 So. 935, 938.

"Lastly, the judgment of homologation precludes demand in respect to the fund the account proposed to be distributed, not made by oppositions when the judgment is rendered, and that judgment, when final, closes litigation as to the fund, and entitles the parties placed on the tableau to the distribution the account proposes." Succession of Dr. Eug. Rabasse, 50 La. Ann. 746, 23 So. 910, 911.

"On the trial of the opposition the executrix pleaded res judicata to all items opposed, which figured on the provisional account. We think the plea should be maintained. As already stated, the appeal taken

from the judgment homologating the account was never filed in this court, and that judgment is now conclusive. We have, therefore, confined our examination to the objections urged to the judgment appealed from, which relate to matters not embraced in the provisional account; nor will we notice the criticisms of counsel, either on the form or want of completeness of the accounts." Succession of Hasley, 27 La. Ann. 586.

"The object of the executor, in filing his account, was to obtain his discharge, not to settle the accounts of the legatees inter se. The consent of the latter, that the account should be homologated, as presented, is binding between them and the executor; but it is not easily perceived, how it could be res judicata between the legatees. It is, however, unnecessary to decide that question, because the plaintiff's action involves a renunciation of that plea. If the judgment of homologation was conclusive as to all matters in the account, the payments mentioned therein, as having been made by the executor to the defendants, could not be recalled; and as the plaintiff has expressly agreed to warrant to them their allotted shares of the real estate, its action must necessarily fail." Milne Asylum v. Female Orphan Society et al., 7 La. Ann. 19.

"The District Judge sustained the plea of res judicata, as to the verity of the alleged debts of the succession of Penelope Ford, upon the authority of Article 1057 of the Civil Code, and the cases reported in Millaudon v. Cajus, 6 La. 225, and Succession of Macarty, 3 La. Ann. 383.

"The evidence shows, that a statement of the debts of the estate of Penelope Ford was filed by the administrator, George W. Ford, on the 22d August, 1846, and that the same was homologated by two judgments of court of the 12th December, 1846, and the 10th September, 1847. * * *

"We are, therefore, of opinion, that neither of the grounds of nullity alleged by plaintiffs should prevail. For, as to the first, the misnomer in the petition for administration, of calling the succession a vacant one, will not avoid proceedings which have been regularly conducted as in a succession not vacant, administered with benefit of inventory; and as to the second, although the judgments of homologation, recognizing the verity of the claims set up against the succession, may not be technically, as to these plaintiffs, res judicata, which excludes all proof to the contrary, yet they constitute, especially at this distance of time, prima facie proof, which imposes upon plaintiffs the burden of establishing the fraud and deception by them alleged. But they have offered no proof whatever upon this subject." Ford et al. v. Newcomer et al., 14 La. Ann. 706.

"From this judgment on the opposition this appeal is taken by the syndic and his attorneys, whose fees are subordinated by the judgment to the special privileges. The contention of the appellants is that, by the judgment homologating the accounts as far as not opposed, their fees were to be paid by preference over the lessor; that the judgments constituted res judicata against the lessor, who made no opposition to the distribution. The contention of the syndic is that he can pay only to the extent of the funds in his hands, and that the uncontested privileged debts and the lessor's unpaid rent more than absorb all the funds; hence the judgment is erroneous in ordering the opponent to be put in the account.

"The judgment homologating these accounts, as far as not opposed, determined, as against all save the opponent, that all these privileged debts were to be paid before the lessor. Whatever may be said of the method of distribution adopted by the syndic, these judgments must have effect. Hubbell v. Read, 14 La. 243; Mayfield v. Comeau, 7 Mart. (N. S.) 182; 1 Hen. La. Dig. p. 759, Nos. 2, 9, et seq. The lessor, whose privilege is superior to that of the opponent (Rev. Civ. Code, art. 3262), is certainly bound by these judgments, according preference over him to all privilege debts. This preference, fixed by the judgment homologating the account, could not be disturbed by the judgment of the lower court, subsequently rendered, on the opposition only of the unpaid vendor." Searcy & Co. v. Their Creditors, 46 La. Ann. 376, 14 So. 910.

"We think it clear that the disputation about taxes is cut off by the plea of res judicata, tendered by the executors W. F. Collins and Mrs. Allen, same having figured on the provisional account previously filed and homologated, and which passed under review in the former decision of this court. That was not only an account, but a partial tableau of distribution, and the item of taxes now agitated was thereon placed, allowed, and paid, in pursuance of the judgment of the court. Such a judgment is final and conclusive against heirs, legatees, and creditors, and operates the bar of res adjudicata." Succession of Allen, 49 La. Ann. 1096, 22 So. 319, 325.

"The defendant in reconvention, Antonne W. Radesich, Sr., sets up a claim for $1,500 for taxes, paid on this property during a number of years, and a claim for $1,612.25 contained in his final account as administrator for the support of his mother, Amanda Radesich. This account was duly homologated and made the judgment of the court on January 28, 1893. This is a judgment for money in favor of the administrator of an estate, and no prescription has been pleaded against said judgment by plaintiffs. It is a final judgment, and for this reason we cannot review the objections now urged against it by counsel for plaintiffs." Satcher v. Radesich, 153 La. 468, 96 So. 35, 39.

"The receiver has moved to dismiss the appeal, on the ground that the account which was approved by the judgment appealed from is only a provisional account. He contends that the creditors have no right to appeal from a judgment approving a provisional account of the receiver of a corporation, especially when, as in this case, the judgment approving the account reserves to the creditors who opposed it the right to oppose any future provisional or final account that may be rendered by the receiver. Although the account is styled a 'provisional account' by the receiver and in the judgment approving it, it is in fact a final account in so far as the judgment approving it would have fixed definitely and settled forever the liability of the receiver for the proceeds of the sale of the movable property of the corporation, if the judgment had not been appealed from. The reservation, in the judgment, of the right of the opponents of the account, 'to oppose any future provisional account or final account that may be filed by the receiver,' would not give these opponents the right to reopen the issue raised in their opposition to this account and determined by the judgment approving it. There may be cases where the issue raised by an opponent of a provisional account of a receiver is not subject to appeal; but the issue tendered in this case is not of that character. In so far as a judgment approving a provisional account of a receiver determines specifically the rights of the creditors, or of any one of them, it becomes res judicata, and the issue so determined cannot be reopened by way of opposition to a subsequent account rendered by the receiver." Woodward, Wight & Co., Ltd., v. National Box Co., Inc., 168 La. 701, 123 So. 296, 298.

"The decree did not and could not distribute a fund not on the receiver's provisional account. In the well-considered case of West v. Creditors, 3 La. Ann. 529, it was held that a decree of homologation has the force of res judicata only as to funds proposed to be distributed by the first tableau." Villere v. N. O. Pure Milk Co., Ltd., 125 La. 719, 51 So. 699, 700.

The taxes in question here, due the city of New Orleans for the year 1932, became due and payable before the death of decedent. The testamentary executor filed a provisional account, and, under the caption "Debts due by This Estate," listed, without any qualification, the following item: "City taxes for 1932 due on property No. 1448 Joseph Street, based on the assessment of 1931, inclusive of interest and penalties, $145.35."

Article V of the petition, of which the provisional account forms part, reads: "Petitioner avers that the above and foregoing account has been prepared with reference to the inventory on file and the bills which have been presented and that, as evidenced by same, said account is true and correct."

Then follows the prayer that the said provisional account be advertised according to law, that same be approved and homologated, and that petitioner be authorized to pay the debts shown thereon, the whole being verified by the executor. In accordance with the prayer of the executor, due proof of publication having been made, no opposition having been filed, and the legal delays for same having elapsed and due proof of the correctness of the account being made, it was duly homologated by judgment of the court signed October 24, 1932. In accordance with this judgment, the taxes in question were actually paid the city of New Orleans by the executor.

Now the authorities cited hereinabove draw many distinctions, and the circumstances in each of those cases were somewhat different. However, a reference to the foregoing quotations will show it to be clearly established that a judgment homologating a provisional account and partial tableau of distribution constitutes res adjudicata as to the claims appearing thereon. The *fact* of their payment may be left open to direct attack by heirs prior to final settlement of the succession, but their *validity* is settled once and for all.

It has always been held that such a judgment is final and conclusive against the legatees and creditors, and in Succession of Peytavin, supra, it was said: "The notification of the filing of the tableau operates as a cita-

tion to all persons concerned therein, creditors as well as legatees; and the homologation of the executors' account and tableau, *bars all further enquiries as to all matters included in the account.*"

And in Succession of Rabasse, supra: "Lastly, the judgment of homologation precludes demand in respect to the fund the account proposed to be distributed, not made by oppositions when the judgment is rendered, and that judgment, when final, closes litigation as to the fund, and entitles the parties placed on the tableau to the distribution the account proposes."

Appellee cites article 2286 of the Revised Civil Code, which reads: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

▪ He contends that the parties to the judgment homologating the provisional account were the executor and the city of New Orleans, and concedes the judgment to be res adjudicata as to them. He contends, however, that appellant is not a party to the judgment, and consequently cannot urge the plea.

The jurisprudence is overwhelming that the creditors and legatees are interested parties and that publication in accordance with law operates as citation to them. There are decisions holding that heirs must be personally cited, but appellant is not an heir. He is a legatee, and therefore a party to the judgment. He is bound by the judgment the same as any one else, and his failure to timely oppose any item contained on the account operates as a bar to him. He is as much a party to the judgment of homologation as any creditor or the executor himself.

The thing demanded is also the same, namely, the city taxes for the year 1932 on the property No. 1448 Joseph street in the sum of $145.35, and the cause of action is the same; namely, the demand for the payment of those taxes which appear on the account as a debt of the succession and which have already been paid in accordance with the judgment. If, as has been held, a judgment of homologation of a provisional account is res adjudicata as to the *validity* of all claims appearing thereon and unopposed, it is in all respects final and conclusive, and said *validity* cannot be questioned

on the ground that some one else owed the debt, or on any other ground.

▪ The executor named in the last will and testament of decedent was the Canal Bank & Trust Company. It was this corporation which opened the succession, qualified as testamentary executor, filed the provisional account and tableau in question here, and provoked the judgment of homologation. Subsequently the Canal Bank & Trust Company went into liquidation, and its successor, the National Bank of Commerce in New Orleans, by consent of all interested parties, qualified as executor. It is the second executor who is a party to this proceeding. We mention this only to show its irrelevancy, because, although the *incumbent* may have been changed, the *office* remained the same. An executor is bound by the legal acts of his predecessor, and cannot be heard to complain of a transaction legally consummated by him. The situation in this case, therefore, is exactly the same as if the original testamentary executor had not been supplanted.

Now, if a creditor or legatee had instituted this proceeding, he would certainly have been precluded by permitting the provisional account to be homologated without the filing of a timely opposition, but the case here is even stronger. This proceeding was brought by the executor himself, who not only listed the claim on his account as one of the "debts due by this estate," and not only acquiesced in the judgment by paying the claim, but who actually provoked the judgment of homologation.

In the case of Conery v. His Creditors, 113 La. 420, 37 So. 14, 15, certain real estate belonging to the insolvent was sold by the syndic under order of court for one-third cash and the balance in one and two years, with 6 per cent. interest. The court in that case said:

"The syndic, in his account, which he swore was 'true and correct,' *charged himself* with the total proceeds of sale, including cash and notes. On the trial of the oppositions to the said account, he testified that the item of the proceeds of sale of real estate was correct.

"That account was approved and homologated by judgment of court rendered on April 29, 1898, and signed on May 5, 1898, and that judgment *concludes the syndic* and creditors of the insolvent as to the sales, distribution of the proceeds, and all items on the account. * * *

"The syndic charged himself with the notes as cash, and on that assumption the distribution was decreed. *He cannot now be heard to question the receipt of the cash portion of the price,* and to urge as a defense that he was guilty of misfeasance in office." (Italics ours.)

In the case of Capdevielle v. Erwin et al., 13 La. Ann. 286, it was said:

"The plaintiff in injunction has appealed. He contends that the judgment of homologation was rendered ex parte by the Clerk, and that no execution can issue thereupon.

"It was not, in legal contemplation, ex parte, for the required notices were given. But *the party who asked for the homologation* of the account showing the balance due by him to the heir, *certainly cannot be heard to say that the judgment he himself provoked,* is not binding upon him as a judgment, because rendered ex parte." (Italics ours.)

For the foregoing reasons, we are of the opinion that the plea of res adjudicata was well taken and should have been maintained; consequently it is unnecessary to consider the other questions presented.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it condemns appellant, James Wilkinson, Jr., to pay the city taxes for the year 1932 on the property No. 1448 Joseph street, in the sum of $145.35, be, and the same is hereby, annulled, avoided, and reversed, and that in this respect there be judgment in favor of said James Wilkinson, Jr., the appellee to be condemned to pay all costs of this proceeding.

Reversed.