## SUCCESSION OF MARCOUR.

### No. 16641.

Court of Appeal of Louisiana. Orleans.
April 19, 1937.

Arthur J. Peters and Daniel J. Murphy, both of New Orleans, for appellant.

Louis R. Hoover, of New Orleans, for appellee Mrs. Louise Marcour.

McCALEB, Judge.

This is an appeal from a judgment dismissing the opposition of Mrs. Eleonore Marcour, widow of Henry Menage, the legal heir of and, presently, the administratrix of the succession of Mrs. Eugenie Marcour, widow of Ralph Haistre, to the final account of Mrs. Louise Marcour Nunez, the former administratrix of the succession.

The facts of the case are not in dispute and we find them to be as follows:

Mrs. Eugenie Marcour, widow of the late Ralph Haistre, died in the city of New Orleans on February 14, 1933, leaving certain property of an appraised value of $5,-389.72. On February 21, 1933, Mrs. Menage, the opponent herein, filed a petition in the district court, alleging that she is a first cousin of the deceased; that the decedent left no descendents nor ascendents other than herself; and prayed for the appointment of a notary public to make the necessary search for a last will and testament of the deceased. Later, on May 10, 1933, she filed another petition, averring that the search for a will of the deceased had been made without success; that the deceased had left' property situated within the jurisdiction of the court; that the succession owed debts; and that it was necessary for the estate to be administered. She further represented that she was the nearest relation of the decedent in the collateral line and that, as such, she was entitled to be appointed administratrix of the estate. She prayed for an inventory of the property of the estate and for the issuance of letters of administration to her.

On May 29, 1933, Mrs. Louise Marcour Nunez filed a petition opposing the appointment of Mrs. Menage as administratrix of the succession, on the ground that she (Mrs. Nunez) was a niece of the decedent; that, as such, she was the nearest of kin and the sole and only heir and that she was entitled to be appointed administratrix of the succession to the exclusion of Mrs. Menage.

On the issue, as to which one of the contestants was entitled to the appointment as administratrix of the succession, a trial was had, Mrs. Menage asserting that Mrs. Nunez should not be recognized because the ancestor, through whom Mrs. Nunez claimed relationship to the deceased, was an adulterous bastard. The district judge, after hearing the evidence, maintained the opposition of Mrs. Nunez, and on November 7, 1933, he signed a judgment dismissing the application of Mrs. Menage. He also decreed that Mrs. Nunez was the legitimate and lawful niece of the decedent and appointed her as administratrix of the succession. On November 13, 1933, Mrs. Menage appealed devolutively from the adverse judgment to the Supreme Court.

On December 19, 1933, shortly after the devolutive appeal had been taken by Mrs. Menage, Mrs. Nunez, having qualified as administratrix of the succession, filed a provisional account, on which she listed certain debts of the succession, and included thereon a commission charged by her as administratrix and also a fee for her attorneys. This provisional account or tableau of distribution was duly published, in accordance with law, and, not being opposed, was homologated by the district court on January 2, 1934.

On January 12, 1934, Mrs. Nunez obtained an order from the court to sell certain stock owned by the decedent in the Suburban Building & Loan Association for the purpose of paying the debts listed on the provisional account.

Later, on July 2, 1934, the judgment of the district court, recognizing Mrs. Nunez as the lawful heir of the decedent and appointing her administratrix of the succession, was reversed (see 180 La. 129, 156 So. 198); the Supreme Court holding Mrs. Menage to be the sole heir of the decedent and entitled as such to the administration of the estate. On July 18, 1934, the decree of the Supreme Court was recorded in the district court and Mrs. Menage was forthwith appointed administratrix in place of Mrs. Nunez. On August 15, 1935, Mrs. Nunez filed a final account of her charge of the succession, which shows that she had collected cash amounting to $1,427.41 and that she had disbursed, in accordance with her provisional account, the sum of $824.74.

In due course, Mrs. Menage appeared in her capacity as administratrix of the estate and also as the sole and only heir of the decedent and opposed the final account of Mrs. Nunez. The opposition alleges, in substance, that the final account not only contains items of disbursement proposed to be made but also items of disbursements made in accordance with the provisional account filed by Mrs. Nunez; that, with the exception of payments made to the Metairie Cemetery Association, fees of notary for making the inventory, and fees of the appraisers, all of the other items, contained on the final account and included in the provisional account, are not due and chargeable against the estate. Mrs. Menage particularly opposes two items—one for $500 representing fees charged by Mrs. Nunez's attorneys, and another for $134.74 representing her commission as administratrix—for the following reasons: That, at the time Mrs. Nunez was appointed administratrix, she was cognizant of the fact of her appointment being in contest; that a devolutive appeal (a suspensive appeal not being permitted by law) had been taken from the judgment appointing her; that shortly after said appeal had been perfected, to wit, on January 2, 1934, she, without performing any acts of administration or conservation of the assets of the estate, filed a petition praying to be authorized to sell certain assets of the estate for the purpose of paying alleged debts of the succession (the principal ones consisting of the items now opposed); that, although she proposed in her provisional account to pay taxes on properties owned by the decedent, none of these taxes were paid and, in fact, as shown by her final account, the only items paid by her were her attorneys' fees and her commission, other than the appraisers' and notary fees; that the services rendered by the attorneys for Mrs. Nunez are not chargeable against the estate because they are services rendered to her in sustaining her appointment as administratrix and that the alleged administratrix's commission paid herself is likewise invalid because she performed no acts of administration or conservation for the benefit of the succession.

The case was set for trial on the foregoing account and opposition, and the district judge dismissed the opposition, approved and homologated the final account, and ordered that the funds be distributed in accordance therewith. Mrs. Menage has appealed to this court from the adverse judgment.

While the ground, on which the district judge dismissed the opposition of Mrs. Menage, does not clearly appear from the record, counsel for both parties tell us, in brief and in oral argument, that the district judge was of the opinion that, because Mrs. Menage failed to oppose the provisional account of Mrs. Nunez, she is now bound by that judgment of homologation and is estopped from contesting its invalidity. Counsel for Mrs. Nunez relies upon the recent case decided by the Supreme Court, In re Liquidation of Canal Bank & Trust Co. (Whitney National Bank, Intervener), 185 La. 34, 168 So. 485, which holds that, where a final account of an executor, recognizing and ordering commissions to be paid him during his tenure as such, has been filed, published

and homologated, it is res adjudicata. and cannot be assailed by anyone in the absence of charges of fraud, misfeasance, or waste.

It is claimed, however, by Mrs. Menage, that the Canal Bank Case is readily distinguishable from the case at bar because: (1) She is the legal heir of the decedent and that, under the jurisprudence, the judgment homologating the provisional account of Mrs. Nunez could not bind her in the absence of personal citation; (2) that, at the time the provisional account was filed by Mrs. Nunez, Mrs. Menage could not oppose it because she was neither a creditor nor a legatee or recognized heir; and (3) that, at all events, she is not bound by it for the reason that it was filed by Mrs. Nunez for the specific purpose of obtaining illegal commissions for herself and invalid fees for her attorneys and not with the object of conserving the assets of the estate and paying the just debts of the decedent.

We shall consider these propositions in their respective orders.

 The question as to whether an heir is estopped from assailing a judgment homologating an administrator's account, in cases where the heir has not been personally cited, has been definitely determined by the Supreme Court in Re Liquidation of the Canal Bank & Trust Co. (Whitney National Bank, Intervener), supra. There, it appeared that the Canal Bank & Trust Company, prior to its liquidation, was trustee and executor, under the will of one Robert G. Irby. As such, it administered the estate from shortly after the death of the deceased, on March 12, 1930, until the filing of its final account and discharge on June 15, 1931. On the final account, the Canal Bank received a fee of $29,274.62 for its services. This account was duly filed, published, and homologated without opposition. Later, the Whitney National Bank, having been appointed successor trustee to the Canal Bank, intervened in the liquidation proceedings of the Canal Bank & Trust Company and alleged that the fee paid to the Canal Bank & Trust Company for services rendered as trustee of the Irby estate, was illegal, and sought the restitution thereof for the beneficiary of the trust. The liquidator of the Canal Bank filed a plea of res adjudicata to the intervention asserting that the final account of the Canal Bank, having been homologated by the court, operated as a bar to the proceeding. The

Supreme Court, in sustaining the plea of res adjudicata, quoted with approval from the cases of Satcher et al. v. Radesich et al., 153 La. 468, 96 So. 35; Succession of Rabasse, 50 La.Ann. 746, 23 So. 910; Succession of Juan Y. De Egana, 18 La.Ann. 263; Carter v. McManus, 15 La.Ann. 676; Succession of Bougere, 29 La.Ann. 378; State v. Moore, Blane & Merklein, 183 La. 927, 165 So. 147; Succession of Spyker (La. App.) 159 So. 347; Miguez v. Delcambre, 109 La. 1090, 34 So. 99; and Succession of Conrad, 45 La.Ann. 89, 11 So. 935, and held that, where an account is filed by an executor or administrator, whether provisional or final, when duly homologated according to law, after due publication, it is final and conclusive as to all the world, the heirs as well as the creditors, in respect to the amount and validity of the claims appearing thereon, in the absence of charges of fraud, misfeasance, or waste. The court also recognized, following the Succession of Conrad, supra, that, while the heir may not attack the amount or validity of the claims approved, he may show that the executor or administrator did not actually pay the debts and claims appearing on his account.

 Applying the foregoing ruling to the case at bar, it will be readily seen that Mrs. Menage (because of her failure to oppose the provisional account of Mrs. Nunez) is now precluded from attacking the validity or the amount of the commissions or attorneys' fees placed thereon, notwithstanding the failure of the administratrix to personally cite her, unless the allegations of her opposition may be construed to charge fraud, misfeasance, or waste on the part of Mrs. Nunez.

 The second proposition, urged for by counsel for Mrs. Menage, is that she should be excused for her failure to oppose the provisional account of Mrs. Nunez because she was neither a creditor nor a legatee of the succession. This point is without merit. It is true that Mrs. Menage was neither a creditor nor a legatee of the succession, and it is also true that the judge of the district court had decided that Mrs. Nunez and not Mrs. Menage was the legal heir of the deceased (from which judgment Mrs. Menage had appealed devolutively), but the district court's adverse decision to Mrs. Menage did not preclude her from opposing the provisional account, as she, at all times, claimed to be the sole and only legal heir of the de-

ceased and she was subsequently recognized as such by the Supreme Court.

The final contention of Mrs. Menage is that the provisional account of Mrs. Nunez is not binding upon her for the reason that it was filed by Mrs. Nunez, not for the purpose of paying the just debts of the succession, but in an attempt to obtain a commission of 2½ per cent. on the inventory of the estate and exorbitant attorneys' fees in advance of the time when the correctness of the judgment of the district court, appointing her as administratrix, could be determined. We find considerable force in this argument.

■ Mrs. Nunez claims that Mrs. Menage is estopped from questioning the provisional account as it has been duly homologated without opposition, and relies upon the decision of the Supreme Court. In re Liquidation of the Canal Bank & Trust Co. (Whitney National Bank, Intervener), supra. But in that case the court clearly recognizes, in its opinion, that res adjudicata or estoppel cannot be successfully invoked where the opponent charges that the administrator or executor has been guilty of fraud, misfeasance, or waste. While it does not appear that Mrs. Menage has charged Mrs. Nunez with fraud, a reading of the opposition amply justifies the holding that she does charge her with misfeasance and waste. The record shows that Mrs. Nunez was appointed administratrix on October 31, 1933, and that letters of administration were issued to her on November 24, 1933. A devolutive appeal had been taken from the judgment appointing her. On December 9, 1933, approximately two weeks after she had received her letters of administration, she filed the provisional account wherein she proposed to pay certain debts of the succession (taxes and small open accounts), but her principal proposal was to pay to her attorneys $500 (approximately 10 per cent. of the amount of the inventory) and to herself a commission of 2½ per cent. on the inventory. The transcript also reveals that she has never paid the taxes, as she had represented at the time she filed her tableau, and that the only items she did pay, besides her commission and attorneys' fees, were the Metairie Cemetery Association, the appraisers, and notarial fees. It must be borne in mind that all this was done shortly after her appointment as administratrix and while her alleged right to the administration of the estate was in contest by virtue of the appeal prosecuted by Mrs. Menage to the Supreme Court.

■ With reference to the fees of curators of vacant successions (which also has application to administrators), article 1194 of the Civil Code informs:

"As soon as the heir or his attorney in fact has been thus put into possession of the succession, or of the effects claimed by him, the curator is bound to render a faithful and exact account of his administration to him, and to pay the balance due, *deducting a commission of two and a half per cent. on the amount of the effects of the succession,* or of the portion by him administered, according to the inventory, not taking into the estimate the bad debts." (Italics ours.)

And article 1200 of the Code provides:

"If, at the rendition of this account by the curator to the judge, the judge be satisfied that the succession is entirely settled, he shall allow the curator a commission of two and a half per cent. on the amount of the inventory of the effects of the succession, or of the portion by him administered, deducting the bad debts."

It will be observed from the foregoing that the law does not contemplate the payment of a commission to the administrator until he has filed the final account of his administration and is seeking his discharge.

■ Article 1191 of the Code provides for the filing, by curators of vacant successions, of an annual account. The only other accounts are provisional accounts which are filed by administrators or curators where it is deemed necessary to pay certain creditors, privileged or otherwise, out of funds in the hands of the curator or, in certain cases, where it is found imperative to sell property in order to pay these debts. Article 1179 of the Civil Code provides that curators of vacant successions cannot pay the debts of the succession, save certain privileged debts excepted by law, until three months after the succession is opened and then only in the manner prescribed in articles 1180, 1181, 1182, 1183, 1184 and 1185. Article 1180 reads:

"When the time for the payment of the debts of the succession is arrived, if the curator has sufficient funds to pay all the creditors who have presented themselves or made themselves known, with interest and costs, he is bound to present his petition to the judge who has appointed him, to be authorized to pay the creditors according to a

statement which he shall annex to his petition, *mentioning the names and places of residence of the creditors, and the several sums due to each."* (Italics ours.)

We are of the opinion that the creditors, referred to in the foregoing article, are persons to whom the deceased was indebted and has no application to the fees for the attorney for the curator or to the commission payable to the curator, which become due at the time he winds up the estate.

In the case at bar, the allegations of the opposition of Mrs. Menage show that Mrs. Nunez has not administered the effects of the succession with prudence. It is evident that her desire to sell homestead stock of the succession to pay debts was not primarily for the purpose of paying the taxes on the real estate, but in contemplation of receiving a commission for herself and of paying her attorneys a fee of $500, in advance of the settlement of her right to the administration of the estate by the Supreme Court. This is misfeasance in office as the articles of the Code above referred to do not authorize an administrator to collect his commission in advance, and certainly the attorney fees for services rendered an estate cannot be fairly calculated until such time as the succession is wound up and the heirs put in possession. By this, we do not mean to infer that attorneys may not, in certain instances, receive a partial payment on account for services already rendered to an estate, but we do observe that, in this case, the fee approved was not and could not have been in that category. Thus, we find that this case falls within the exception, recognized by the Supreme Court in Re Liquidation of the Canal Bank & Trust Co. (Whitney National Bank, Intervener), that the account of an executor or administrator, after due publication and homologation, may be attacked, even as to the amount and validity of the claims contained therein, where the opposition charges fraud, misfeasance, or waste.

Hence, the judgment dismissing the opposition must be set aside and the case remanded to the district court for further proceedings, in respect to the former administratrix' commission and the fees of her attorneys. As to her commission, the law (article 1200 of the Civil Code) fixes the amount thereof at 2½ per cent. of the portion of the estate administered by her, deducting bad debts. Therefore, evidence may be adduced to determine the portion of the estate administered by Mrs. Nunez. Regarding the fees to which the attorneys for Mrs. Nunez are entitled, the district judge should consider only such services inuring to the benefit of the succession and not services rendered in an unsuccessful effort to maintain her appointment as administratrix. See Succession of Florance, 36 La.Ann. 304, Succession of Benton, 106 La. 494, 31 So. 123, 59 L.R.A. 135, and Succession of Bertrand, 127 La. 857, 54 So. 127.

Mrs. Menage also attacks the payment of an item of $20, appearing upon the provisional account, representing the yearly premium on Mrs. Nunez' administratrix' bond. No reasons are advanced for challenging the correctness of this item and none occur to us. The opposition respecting it was therefore properly dismissed.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that this cause be remanded to the civil district court for the parish of Orleans for further proceedings according to law and consistent with the views herein expressed.

Reversed and remanded.