REDMANN, Judge.
On certiorari, we earlier amended (so as to allow amendment of a motion we erroneously labeled a petition) the trial court’s judgment of February 6, 1981, purporting to dismiss on exception of no cause of action a motion to remove the provisional administrators of this succession. 400 So.2d 338 (La.App. 4 Cir. 1981). On application of the provisional administrators, the supreme court granted certiorari and “reversed; case remanded to the court of appeal for determination on the merits.” 407 So.2d 1130 (La.1981). On the merits, we conclude that the provisional administrators must be removed as disqualified, La.C.C.P. 3182, because of their abuse of their trust.
Justice Lemmon’s concurrence in the reversal of our judgment explains that the trial court’s judgment, “couched in terms of maintaining an exception .. ., really decided the merits of the action.”
The provisional administrators had taken the position in this court that they did not “comprehend why the Court of Appeals would examine the record [as movers had asked] when as we perceive it the only thing before the court is whether an excep *1172 tion of no cause of action was properly maintained.” (Emphasis added.)[1]
The provisional administrators then took the position in their writ application to the supreme court that the question was “Should the Court of Appeal have . . . grant[ed] leave to amend . . . when the trial court had already, in effect, conducted an evidentiary hearing on the motion to remove, heard all of mover’s evidence, and then dismissed the motion?” (Emphasis added.)
The provisional administrators now take the position that the supreme court’s reversal and remand for determination on the merits “means the merits of the exception of no cause of action . . . . ” (Emphasis added.) “We must emphasize that this matter has never been tried ‘on the merits.’ ” They oppose our letting the transcripts be filed.
The provisional administrators err. We were earlier induced into the error of believing that the trial court’s ruling was only the maintaining of an exception of no cause of action. The supreme court has disabused us of that error. Its ruling is that we are to decide not whether the motion to remove states a cause of action but whether the judgment after the trial of that motion is correct on the merits. The provisional administrators’ argument is that, as the newly-filed correct transcripts show, after movers’ evidence the administrators moved for a “directed verdict,” i.e., dismissal, C.C.P. 1810 B (adding “If it’s not granted, I propose three or four days of testimony”).
The provisional administrators argue they “have not been called upon nor permitted to argue ‘the merits’ .. . and we persist in our position that we will not respond in kind to the brief filed by Relators and argue ‘the merits’ .. . unless and until we have had opportunity to present evidence.”
The newly-filed transcripts contain, except for four pages of testimony by Pfis-ter’s ex-wife, Marlene Pfister, nothing but testimony by the provisional administrators and their relatives. The January 30 transcript is 48 pages of cross-examination of Duett; the February 6 transcript is 45 pages of Duett and 39 of Guidry, plus six of Duett’s mother-in-law, Meline Poynot; nine of Duett’s wife, Marilyn Poynot Duett; and nine of Oscar F. Poynot. That testimony contains judicial admissions by the provisional administrators (further corroborated by their relatives) of the fáctual matters upon which we base our action. The provisional administrators could not be heard to deny the actions that they have admitted, and they offer no hint that they would attempt to do so. This is simply not a case of their not having been heard in respect to the matters on which we act, notwithstanding that they might have wished to enter evidence on other matters.
The newly-filed transcripts leave no doubt that the provisional administrators have used their trust to appropriate to their relatives (who are also relatives of decedent) and to others, by unadvertised private sale, the corporeal movables of the succession, albeit at prices estimated by an established auction exchange, all without notice to the presumptive (though questioned) testamentary heirs and legal heir.
One can understand the suspicion of the relatives of the 87-year-old decedent who on the day of her husband’s death in 1974 executed a will before notary and witnesses naming a non-relative her sole heir; who 16 days later executed a notarial act (not recorded until 15 weeks later) adopting that non-relative; who was interdicted before the recordation of that act of adoption; and who three years thereafter executed anoth *1173 er will, naming that same non-relative and his children as her heirs. (That non-relative and his children, the Pfisters, are the movers for removal of the provisional administrators now before us. The adoption has been under apparently unpursued attack for over six years since June 1975 and the wills naming the Pfisters have been under apparently unpursued attack since three weeks after the testatrix’s death on April 20, 1980.)
But one must also understand that it is up to the court and not to the provisional administrators to decide who are the heirs of a decedent, to decide whether a will or an adoption is valid. Our earlier opinion, 400 So.2d 338, sets forth the extremely limited authority of provisional administrators for “preserving, safeguarding, and operating the property and business of the succession,” C.C.P. 3112. The provisional administrators of this succession appear instead to have decided, in their exercise of their authority, that the adoption of Pfister and the wills favoring the Pfisters were all invalid, and that the purported last dictates of the testatrix should therefore be thwarted. They have, in any case, set out to do so, by preferring their relatives (and others) by the device of obtaining an order to sell without advertisement all the decedent’s movables, including furniture, silver and the like, as “perishable goods,” C.C.P. 3264, and selling to the relatives whatever they wanted. The attitude of administrators and other relatives seems best indicated by one of the relatives (not an administrator): “but you see, after all, there were some things I wanted for my children and grandchildren. After all, I married into that family for 58 years, so after all, you don’t want strangers to take certain things in a family.”
The law is that if the decedent wants strangers to take all of the things that belong to her (as our decedent’s last will provides, notwithstanding that her relatives contest that will), her relatives must abide her legally declared wishes. They cannot defeat them by initiating a contest of her last will, getting their nominees appointed provisional administrators to “preserve, safeguard, and operate the property,” C.C.P. 3111, until the will contest’s outcome, and then having the provisional administrators turn over all the desired movables to them (and also sell the decedent’s house to further defeat her will). That that has been the effort of these provisional administrators is the only reasonable conclusion from the fact of the provisional administrators’ unadvertised sale of silver and furniture as “perishables” by passing lists of items to family members without affording a similar opportunity or even any knowledge to the presumptive testamentary heirs and the presumptive legal heir, the adopted child of decedent. Instead of awaiting and risking the outcome of the will and adoption contests, these provisional administrators have prejudged those contests and elected to distribute the personal effects of decedent among her and their family by private sales.
The record contains other doubtful circumstances of this much-litigated situation, but on the sole ground of the sales as “perishables” described above, we reverse the trial court and we remove from office both those administrators and (as also moved) their court-confirmed attorneys who counseled and arranged the defeat of the testatrix’s last will rather than let the court decide its validity.
It is therefore ordered that, effective immediately as an indispensable necessity to “preserve [and] safeguard” this succession, C.C.P. 3111, the provisional administrators Henry J. Guidry and William M. Duett and their attorneys be and they are removed from office, and that the trial judge appoint forthwith a successor provisional administrator neither connected with nor suggested by either the Pfister side or the decedent’s family side of this dispute. Movers’ costs are to be borne by the succession.

. This court before its June 2, 1981 decision had a reporter-certified “transcript of the proceedings held ... on the 6th day of February,” and that two-page transcript contained only the trial judge’s reasons for “maintain[ing] the exception of no cause of action,” and no testimony whatsoever. We concluded, as the provisional administrators’ language quoted above suggests, that this was a simple matter of maintaining an exception of no cause of action. After the supreme court’s reversal of September 18, 1981, however, movers on September 20 presented to this court a 134-page “transcript of the proceedings ... on the 6th day of February” plus a 52-page transcript of proceedings of January 30.