NORRIS, Judge.
The First National Bank of Shreveport (hereinafter referred to as the “Bank”) appeals a judgment ordering the homologation of a tableau of distribution in this succession proceeding.
We feel it unnecessary to detail again the entire factual posture of this case other than to point out that it concerns the validity of a bitterly contested nuncupative will by private act executed by Willard Kilpa-trick dated January 16, 1977, which in effect revokes a prior will of September 16, 1976, in which the Bank was named trustee and executor of the bulk of Mr. Kilpatrick’s estate for an educational foundation. The present co-executors’ appointment depends on the validity of the January, 1977 will which was upheld by the lower court and is the subject of another pending appeal before this court, an opinion in that matter being handed down this same date in Succession of Kilpatrick, 422 So.2d 464 (La. App. 2d Cir.1982).
We have previously held that the Bank both as executor and trustee under the 1976 will has a justiciable interest in the action to annul the 1977 will and in having the 1976 will recognized and probated. Succession of Kilpatrick, 356 So.2d 1083 (La.App. 2d Cir.1978).
After the lower court upheld the validity of the will, the following events occurred which are material to this appeal.
On March 1,1982, attorneys for co-executor, Arnold Kilpatrick, prepared and presented to the trial court an ex parte motion for authority to pay certain attorneys’ fees and expenses in the amount of $114,000. The judge signed this order on the same day; however, it was never filed.
On March 16, 1982, Harper Terrill, the other co-executor filed a motion or pleading in the proceedings seeking an order from the trial court authorizing the payment of certain debts and charges, which totaled approximately $580,935.84, and directing that any publication, advertisement or notices required to be made by the Code of Civil Procedure be waived and dispensed with. Included in these debts and charges was the sum of $396,450.85 for attorneys’ fees, estate taxes in the amount of $181,590 and a debt to the Jonesboro Insurance Agency in the amount of $2,894. On the same date, an order was signed by the trial *485 court ordering the Bank to show cause on the 18th day of March, 1982 why the executors should not be authorized to borrow money on behalf of the estate in order to pay the above listed debts and charges and why such charges and debts should not be paid without following the prescribed procedures of notice, service, advertisement and hearing.
On March 18, 1982, the Bank filed an opposition to Terrill’s motion, a motion to stay proceedings, and an alternate motion for continuance. The Bank’s opposition contended among other things that the request for payment of fees, expenses and charges had been filed in derogation of law and failed to comply with the procedures required for the payment of succession debts and charges set forth in La.C.C.P. Art. 3301 et seq.; the portion of the request for attorneys’ fees and other charges sought to be paid from succession funds was not actually owed by the succession; the payment of such fees and expenses could not be made without giving proper notice, advertisement, hearing and specified delays; and both executors had not joined in the filing of the motion as required by La.C.C.P. Art. 3192. It was further contended that the payment of the fees, expenses and charges should not be made pending a determination of the issues on appeal and the making of such payments would improperly dissipate the estate funds which could not later be recovered in the event the case was overturned on appeal. Finally, the bank contended that there were insufficient funds to pay the alleged debts and charges, and the proposal to borrow would encumber the remainder of the estate.
At the hearing on March 18, 1982, the court sustained the opposition of the Bank, finding that the motion failed to comply with the requirements of the Code of Civil Procedure, both executors had not joined in the motion, and there had been no authorized waiver of the notice and advertisement requirements.
Thereafter, on March 24, 1982, both co-executors filed a Petition for Homologation of Tableau of Distribution seeking a judgment of homologation authorizing the payment of the following attorneys’ fees and an appraisal fee:
1) Attorneys’ fees and expenses to Brown, Wicker and Amman $ 87,500
2) Attorneys’ fees and expenses to Larry Johnson 43,750
3) Attorneys’ fees and expenses to John Landrem 43,750
4) Attorneys’ fees and expenses to Whitten and Blake 16,000
5) Appraisal fee to Herman L. Bass 750 TOTAL: $191,750
It is significant to note that where the Motion of March 16, 1982, alleged that there were insufficient funds to pay the debts and charges listed in that motion, the petition of March 24,1982 alleged the existence of sufficient funds to pay the charges therein listed in full. It is even more noteworthy that the pleading filed made no reference to other known outstanding debts and charges, provided no ranking or order of priority of payment and provided no listing of the assets of the succession from which the other known debts and liabilities could be satisfied.
The Bank again filed an Opposition to the Petition for Homologation of Tableau of Distribution, and on April 6,1982, the Court issued an order setting the matter for evi-dentiary hearing on April 13, 1982. This opposition again asserted certain procedural defects and contended that the debts and charges sought to be paid were not actually owed by the succession, should not be paid prior to a final determination of the issues of the case presently on appeal, and that the making of such payments prior to that time would dissipate the estate of funds which would not be recoverable at a later time and would result further in the encumbering of the remainder of the estate.
After the hearing on the opposition, the district court rendered a decision ordering the homologation of the Tableau of Distribution as requested in the petition filed March 24, 1982, as well as an additional charge of $4,219 for insurance premiums due and owing Commercial Union on property belonging to the succession which had not been included prior to the hearing.
*486 Judgment was signed by the trial court on April 15, 1982, and a suspensive appeal was taken from this judgment by the Bank[1] which assigns the following errors of the trial court:
1) In failing to hold that the payment of the attorneys’ fees and expenses should not be made until a final determination on the merits of the will challenge;
2) In failing to hold that at least a substantial portion of the attorneys’ fees and expenses were incurred for the personal benefit of the executors and not for the benefit of the estate;
3) In failing to hold that a portion of the attorneys’ fees and expenses sought to be paid were not for services rendered to the succession of Willard H. Kilpatrick; and
4) In failing to hold that the request for payment of certain attorneys’ fees and expenses were unreasonable and grossly excessive when considered in the context of the time, manner, and purpose for which they were allegedly rendered.
Although not raised by any of the parties to this appeal, we have noted because of our holding on the merits of the validity of the will, whether or not at this point the Bank would continue to have a “justiciable interest” in the filing of this opposition to the judgment at issue. Wé conclude that until such time that a judgment becomes final and determinative of that issue, that the Bank continues to have an interest in the opposition of this judgment of homologation. Because the matter was still pending at the time this appeal was filed and will continue to be pending until a final determination is reached, the Bank has a right of action to contest this judgment, and we will determine the merits of this appeal.
Although we find that the argument of the Bank also has merit for reasons discussed at a later point in this opinion, we reverse the judgment of the trial court upon our finding that the trial court was erroneous in its order homologating the Tableau of Distribution because of its failure to comply with the provisions of La.C. C.P. Art. 3303 which provides:
When a succession representative desires to pay charges or debts of the succession, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those charges and debts to be paid.
If the funds in his hands are insufficient to pay all the charges and debts in full, the tableau of distribution shall show the total funds available and shall list the proposed payments according to the rank of the privileges and mortgages of the creditors. [Emphasis added.]
In discussing the import of La.C.C.P. Art. 3301 et seq., we note first the preliminary statement of Book VI, Title 3, Chapter 7— Payment of Debts and Charges of Succession:
The Civil Code articles dealing with payment of succession debts are not altogether clear. The system, however, appears to be as follows:
The administrator should pay no debts without court authority (Civil Code Arts. 1063 and 1150), nor should he pay any debts within three months after the succession is opened, with certain exceptions (Civil Code Arts. 1179 and 1189). If the funds are sufficient to pay all the debts, he merely files a petition for authority, annexing a list of the debts. If the estate is insolvent, he presents a tableau of distribution, showing the rank of the various privileges (Civil Code Arts. 1063, 1180, and 1181). Advertisement is required, whether or not" the estate is insolvent (Civil Code Arts. 1064 and 1184), except with respect to certain privileged debts (Civil Code Art. 1189). If no opposition is filed, the petition for authority is homologated and the debts are paid (Civil Code Arts. 1065 and 1185). If an opposition is filed, it is tried summarily (Civil Code Arts. 1066 and 1186), and the judg *487 ment is appealable (Civil Code Arts. 1066 and 1187).
For the most part, the system prescribed by the Civil Code is retained in these articles. However, it should be noted that the customary practice, at least in Orleans Parish, is to combine the petition for authority to pay debts with the final account. Technically, a final account should show actual rather than proposed payments by the succession representative and should be filed only after authority has been granted to pay debts, after the debts are paid and the administration is complete. See Succession of Bofen-schen, 29 La.Ann. 711 (1877). This Chapter does not deal with the account, but only with the payment of debts and the procedure therefor. [Emphasis added.]
This explanation is further amplified in 25 TuLL.Rev. at 485 wherein it states:
As explained in the preliminary statement, Articles 3301-3308 retain the basic system as prescribed by the Civil Code articles but clarify it and make a few changes. In regard to debts which should be paid immediately, Article 3302 gives the court broad discretion and does not attempt to enunciate specific examples of such debts. The notice of filing the petition for authority to pay debts and charges need only be published once in the parish where the succession proceedings are pending. Provision is also made for an interested party to petition the court for notice of the filing of a tableau of distribution. Only a suspensive appeal is permitted from a judgment homologat-ing a tableau of distribution and the succession representative is given authority to pay the claims which have been approved and are not in dispute. [Footnotes omitted.]
We admit that the trial court is given broad discretion over debts which it is authorized to order paid immediately and that the Code of Civil Procedure does not attempt to determine the exclusive nature of those debts. However, we conclude that when a succession is insolvent, or the funds on hand are insufficient to pay all the debts and charges in full, the trial court must require that the executors comply strictly with the second paragraph of La.C.C.P. Art. 3303 before it may make a determination of the propriety of the debts which it authorizes paid by court order. We conclude that because the Tableau of Distribution filed in the instant case does not comply with the provisions of this article, that the trial court was clearly wrong in ordering its homologation.
Our review of the record in the posture presented by this appeal reveals that this succession is insolvent and the funds in hand are insufficient to pay all the known debts in full. At the hearing on the opposition, the Bank subpoenaed Sam Donald, the certified public accountant who was the accountant for this succession. When Mr. Donald did not appear at the hearing, the parties entered into the following stipulation:
BY MR. SUTHERLAND,
Of Counsel for Defendant in Rule: We would file then in accordance with that the financial report of January 31, 1982, prepared by Mr. Donald with the stipulation that if this $219,000.00 was paid out there would still be debts of approximately half a million dollars outstanding.
BY THE COURT: All right. Let the stipulation be made and let the document be filed.
sjí sfc sfc if: *
BY THE COURT: Well, for the record, I think Mr. Brown and Mr. Amman will go along with that stipulation. I think Mr. Donald is not here because of some misunderstanding and I think that is the reason he is not here in the first place and they left voluntarily; so, as far as I’m concerned, the stipulation is binding on all of the parties and the documents can be filed. I don’t really see any critical point in the case. If that is the financial statement, that is the financial statement, and I don’t see any problem regarding that...
The Statement of Assets and Liabilities of the estate contained in the report of Mr. *488 Donald[2] indicates that as of January 31, 1982, the assets of the succession were $494,549.75 including $219,391.66 in cash. The stipulation indicates that even if the $219,000 available in cash was paid out that the debts of the succession remaining over and above that amount would be in excess of $500,000. There was no exact figure presented either in the evidence or the stipulation to indicate what the exact amount *489 of the liabilities were and what those debts related to. In short, the other debts, were not listed nor ranked.
Therefore, we conclude that the trial court clearly abused its discretion in ordering these debts paid before it was presented with a complete list of all of the debts then known to the executors and their ranking insofar as privileges and mortgages of the creditors were concerned and the proposed payments in connection therewith. We conclude that before a trial court can order debts paid in a succession which is or may be insolvent, the executors must present a full, complete and final exhibit of the financial condition of the estate known at the time in order for the court to make a determination of whether or not the debts should be paid. See Succession of Ott, 182 La. 850, 162 So. 642 (1935).
We find no justification here for the admitted failure of the executors to include certain claims and to provide the court with a full and complete picture of the financial affairs of this succession. We find certain language in Lobit & Charpentier v. Castille, 14 La.Ann. 779 (Opelousas 1859), which is equally appropriate here:
The regular mode by which an ordinary creditor is to obtain payment of his judgment against an estate, is concurrently with the other creditors of the succession. C.P. 987, 1054; C.C. 1168. This implies that an account and tableau of distribution should be filed, wherein each creditor may be classed, in order that he may receive his portion of the funds in the hands of the administrator. This mode of proceeding is just and equitable. It prevents one creditor from obtaining an undue advantage over the others, in the assets in the hands of the administrator, and ultimately, from enforcing a demand upon the innocent surety of the same.
We further note as persuasive the holding of the court in Succession of Lacroix, 29 La.Ann. 366 (N.O.1877), where the court found that a first provisional account filed by an administrator which contained no list or classification of creditors and no statement of the debts of the succession but a mere marshaling of the proceeds of one asset and the recognition of but one creditor of the succession could not be the basis of a valid judgment. There, the court stated:
... The paper filed as an account could not be made the basis of a judgment. It mentions none of the privileged claims inseparable from the settlement of a succession, the existence of which we are bound to presume. It ignores the claim of the city for over ten thousand dollars, acknowledged by the administrator, and to pay which he provoked the sale of the property — a claim shown to be, in date and in rank, prior to Billgery’s mortgage.
It may be that no expenses were incurred for the last illness, the coffin, the funeral and the grave; but there are law charges, which can not be denied. Were they paid, are they due? If paid, or to be paid, out of what fund? How, when, and by whom have they been or shall they be satisfied? Is the succession solvent or insolvent? If solvent, what is the amount of its assets, and of those assets what has been or may be realized? If insolvent, what are its liabilities, the extent and character of its liabilities? What proportions shall be paid to the creditors? In the account presented there is no list, no classification of debts, no proposed distribution of funds between said creditors.
It is manifest that the judgment which homologates said account may work an irreparable injury to the city, and against the effects of that judgment the city could protect its interest either by an action of nullity or by appeal. That judgment, though erroneous, does exist, may be complied with or executed. As an account, the paper filed by the administrator has no legal existence. It does not even allow a credit of five hundred dollars paid by the administrator to Billgery on the thirtieth of August, 1876. It is not merely irregular and incorrect; it is absolutely incomplete.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is hereby annulled, avoided, and *490 reversed at costs of appellee. [Emphasis added.]
The record and the admissions of counsel themselves make it abundantly clear that certain creditors were simply omitted by choice from the Tableau of Distribution in question. Not only were certain creditors omitted, but the attorneys listed on the Tableau adjusted their fees to provide for partial payment to come within the bounds of the available money to pay such fees. In his testimony, Mr. Whitten admits that the fees were adjusted to amounts which would total less than the money available in the checking account. He testified that there was an agreement reached among the six attorneys[3] for the co-executors to provide for partial payment of attorneys’ fees due and owing out of the available cash and to make arrangements to borrow money to pay the remainder of the debts presently due. Because there were insufficient funds to pay the estate taxes due and owing, the agreement was to pay them later and pay the attorneys first.
To allow such a practice to be upheld would violate the letter, spirit, and intent of the applicable codal provision. To allow co-executors or their attorneys to pick and choose the debts to be paid out of the assets of the succession by paying the debts they prefer to pay first without giving the trial court a true picture of the state of the succession is clearly in violation of La.C.C.P. Art. 3303. We conclude that the situation presented here for our review is exactly the type practice sought to be prohibited by that article.
It is particularly important that strict compliance with La.C.C.P. Art. 3303 be required because a judgment homologating a provisional account and partial payment constitutes res judicata to the claims appearing therefrom. See Succession of Spyker, 159 So. 347, (Orl.App.1935).
All of the known debts of the succession should have been listed and ranked in order that the information available to the court was adequate for it to properly determine whether or not these debts and charges should have been paid. This was not done; therefore, the judgment of the trial court ordering the Tableau of Distribution homol-ogated must be reversed and remanded for further proceedings complying with this procedure.
Because we are remanding this matter for further proceedings, we feel compelled to address generally the other arguments raised by the Bank in this appeal. To say that this cause has been bitterly, actively and completely contested' is an understatement. At each stage of the proceedings, we have been required to rule upon appeals and writ applications. In an attempt to avoid other applications and further attorneys’ fees incurred in connection therewith, we comment as follows.
For the sake of brevity, we conclude that the Bank’s arguments can be addressed by the resolution of one issue; that is, what is the duty and the attendant rights and privileges of an executor serving during the pendency of a will contest?
Although the law does not specifically provide for such duties and obligations, there are certain statutory provisions which are instructive in dealing with this issue.
La.C.C.P. Art. 2122 provides:
A judgment or order of a trial court appointing or removing a legal representative shall be executed provisionally notwithstanding an appeal therefrom.
A judgment rendered on appeal vacating a judgment or order of the trial court appointing a legal representative does not invalidate any of his official acts performed prior to the rendition of the judgment of the appellate court. [Emphasis added.]
La.C.C.P. Art. 2974 provides:
Appeals from orders or judgments rendered in succession proceedings shall be *491 governed by the rules applicable to appeals in ordinary proceedings, except that an order or judgment confirming, appointing, or removing a succession representative, or granting an interim allowance under Article 3321 shall be executed provisionally, notwithstanding appeal.
The acts of a succession representative shall not be invalidated by the annulment of his appointment on appeal. [Emphasis added.]
Therefore, it is clear that while there may be a suspensive appeal relating to a decision of a trial court insofar as it relates to the validity of a will, there is no suspensive appeal from the appointment or removal of an executor named within that will. During the interim period while the validity of the will is being determined on appeal, the executor or executors so named act provisionally until a final determination on the merits can be made. See Succession of Tyler, 192 La. 365, 188 So. 31 (1939). It is clear that the rationale behind this practice is to protect the succession and to insure that the property of the succession is preserved, safeguarded, and conserved pending the outcome of the appeal rather than holding everything in limbo until the appeal process can be exhausted.
Therefore, we conclude that in a case such as the one presented in this appeal, when the 1977 will was admitted to probate and the Bank suspensively appealed from that probate, contesting its validity, the co-executors assumed the position of “provisional executors.” While there are no statutory provisions for such executors, we construe such provisional executors to occupy identical positions as provisional administrators with their attendant responsibilities and limitations.
The provisional administrator was recognized in the jurisprudence long prior to our present Code of Civil Procedure. See Succession of Roth, 133 So.2d 140 (La.App. 4th Cir.1961) reversed on other grounds 139 So.2d 216 (1962). In Succession of Clark, 30 La.Ann. 801 (La.1878), the court described the office of provisional administrator as an appointee who was a guardian or keeper rather than an administrator.
Thereafter, based on the prior jurisprudential rules, the Code of Civil Procedure provided for the appointment of provisional administrators as follows:
The Court may appoint a provisional administrator of a succession, pending the appointment of an administrator or the confirmation of an executor, when it deems such appointment necessary to preserve, safeguard, and operate the property of the succession. On the application of an interested party, or on its own motion, when such an appointment is deemed necessary, the court may appoint a qualified person as provisional administrator forthwith. [Art. 3111]
A provisional administrator shall furnish security and take the oath of office required by Articles 3152 and 3158, respectively. He shall continue in office until an administrator or executor has been qualified, or until the heirs or legatees have been sent into possession.
Except as otherwise provided by law, a provisional administrator has all of the authority and rights of an administrator, and is subject to the same duties and obligations, in the discharge of his functions, of preserving, safeguarding, and operating the property and business of the succession. [Art. 3112]
A provisional administrator does not have all of the authority and duties of an administrator or executor but has only those appropriate to preserving, safeguarding, and operating the succession property. See Succession of Poynot, 400 So.2d 338 (La.App. 4th Cir.1981) reversed on other grounds 408 So.2d 1170 (1981).
Applying the foregoing principles to the co-executors in this case, we hold that their duties during the pendency of the appeal in connection with this case are limited to those necessary to preserve, safeguard and operate the property of the succession. In other words, the functions of the co-executors are limited to those necessary for the performance of their overriding duty which we see as being to protect and conserve the *492 estate pending a final outcome of the appeal.
The reason why it is imperative that they be so limited in their functions pending an appeal is because a judgment rendered on appeal vacating an order of the trial court appointing or confirming a testamentary appointment of a succession representative does not invalidate any of his official acts performed prior to the rendition of the judgment of the appellate court. La.C.C.P. Art. 2122. Therefore, were we to construe these articles to mean that the co-executors had any broader powers than those necessary to protect and conserve the estate, then the contestation for a permanent appointment might well prove to be a vain and useless exercise in futility because there may be no estate left to administer.
We further conclude that because their duties are restricted to those necessary to preserve and conserve the estate, that only such debts which are necessary to preserve and conserve the estate should have been approved by the court for payment during the pendency of the appeal on the validity of the will. Our review of the record leads us to conclude that the trial court did not apply this standard in rendering its judgment.
In connection with the judgment appealed from, we find no problem with the payment of the insurance premiums on the succession property. The evidence reveals that this sum was past due and owing and certainly necessary for the preservation of and protection of the immovable assets involved.[4] It is conceivable that the appraiser’s fee could also fall within this category; but from the evidence, we are unable to determine exactly what that fee represents.
However, we feel that a more serious problem for consideration is presented by the attorneys’ fees sought to be paid. In connection with this, we note from the evidence that there are substantial sums sought to be paid which are candidly admitted to be attributable to Mrs. Kilpatrick and her succession. Clearly, such sums are not necessary to the preservation and protection of Mr. Kilpatrick’s estate and should not be ordered paid out of his succession’s assets.
Additionally, we note that there are at least six attorneys who are representing the co-executors at this time and that all sought partial payment for services rendered prior to the date of the homologation. We note in our review of the evidence presented in support of these services that many are ambiguous, duplicitous, and questionable at best. We particularly make this observation with regard to expenses incurred in connection with the attempts to promote cancer research allegedly on behalf of obtaining the services of the expert witness from Sloan Kettering. Although we recognize that such efforts may result in great benefit to mankind, we are constrained to conclude that Mr. Kilpatrick’s succession should not be financially responsible for them.
While we do not in this opinion hold that attorneys’ fees cannot be paid by a provisional judgment of homologation, we do hold that such fees paid prior to the final determination of the will contest should be solely limited to those incurred in connection with the preservation and protection of the succession property.[5]
We further point out that a trial court has express and inherent authority to determine whether a particular fee is excessive and that an attorney is subject to disciplinary action if he enters into an agreement for, charges or collects a clearly excessive fee. DR 2-106(A), DR 1-102(A)(1), La.C. P.R., L.R.S., Title 37, West’s LSA Vol. 21A, and cases annotated thereunder.
*493 Accordingly and for the foregoing reasons, the judgment of the trial court homol-ogating the Tableau of Distribution is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion. Costs of this appeal and the costs incurred in connection with the homologation of the Tableau of Distribution are assessed against appellees.
JUDGMENT REVERSED and REMANDED.
FRED W. JONES, Jr., J., concurs and assigns written reasons.

. Two writ applications were filed and granted in connection with the granting of this suspen-sive appeal.

. The financial report filed by Donald contained the following Statement of Assets and Liabilities:
ESTATE OF WILLARD H. KILPATRICK ARNOLD R. KILPATRICK AND HARPER A. TERRILL, CO-EXECUTORS Jonesboro, Louisiana
STATEMENT OF ASSETS AND LIABILITIES JANUARY 31, 1982
ASSETS
Cash in Jackson Parish Bank - Checking account 219,391.66
Cash on deposit with Jonesboro Federal Savings and Loan Association (Undivided V2 interest in $1,000.00) 500.00
Notes receivable - Clements Ford 1,041.62
Miscellaneous assets Undivided one-half interest in household goods 1,000.00
Undivided one-half interest in Certificate of Equity, Red River Co-op 856.17
Undivided one-half interest in pickup trucks 2,115.69 3,971.86
Stocks and bonds Undivided one-half interest in 62 shares - First National Bank - Shreveport 1,178.00
Undivided one-half interest in 10 shares - Jackson Parish Bank 1,750.00
Undivided one-half interest in 2 U. S. Savings Bonds 160.00
Undivided one-half interest in U. S. Savings Bonds
(18 - $200 denomination and 17 - $500 denomination) 8,811.75
Undivided one-half interest in Mississippi Chemical Co. 250.00
Undivided one-half interest in Pinehill Club (V2 of $1,863.88) 931.94 13,081.69
Real Estate 277,321.25
Less accumulated depreciation 20,758.33 256,562.92
TOTAL ASSETS 494,549.75
LIABILITIES
Executors fees 11,318.80
Attorneys fees 268,845.00
Appraisal fees 10,000.00
Accountants fees 58,383.84
Court costs 23,890.17
Specific requests 4,479.30
Accounts payable - Estate of Katherine T. Kilpatrick 82,258.15
TOTAL LIABILITIES 459,175.26
ASSETS OVER LIABILITIES (ESTATE CORPUS) 35,374.49
See accountants’ compilation report.

. The agreement reached by all of the involved attorneys was to seek payment of attorneys’ fees due and owing; however, William D. Brown in his testimony indicated that he preferred that his firm’s fees not be placed in line for payment until after the resolution of the will contest.

. We do note, however, that if the property insured was community property then only one-half of the sum due was payable from Mr. Kilpatrick’s estate as the other one-half due would be a debt of Mrs. Kilpatrick’s succession.

. In connection with this, we observe in passing that reasonable attorneys’ fees for the preparation and filing of petitions for authority to grant oil and gas leases and the activities and expenses required in connection therewith would be examples of such authorized interim payments.