651 So.2d 920 (1995)
SUCCESSION OF Marjorie Palmer McLEAN.
No. 26,566-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
Rehearing Denied April 6, 1995.
*921 James A. Van Hook, for appellant, Mary McLean Obering.
R. Cody Mayo, Jr., for appellee, J. Frost Merriott as Trustee for Harvey McLean Trust.
Before MARVIN, HIGHTOWER, and WILLIAMS, JJ.
MARVIN, Chief Judge.
In this litigation between the two residuary legatees of a $4.8 million estate that arose when the final accounting was sought to be homologated and approved, the daughter-legatee appeals a 1994 judgment insofar as it limited her executor's fee to $60,000 already advanced, notwithstanding that a 1992 judgment approving her fourth annual accounting as executor fixed the amount of her executor's fee at $150,000 and declared or decreed that the balance of $90,000 "shall be paid ... upon homologation of the final account ..."
The other residuary legatee is Harvey D. McLean, Jr., the brother of the executor, whose bequest was placed by the testator in a spendthrift trust. McLean's sister, Mrs. Obering, qualified as trustee of that trust in 1989 and as the executor of the succession in 1988. Mrs. Obering resigned as McLean's trustee on January 27, 1993, but continued to serve as executor. Mrs. Obering served her annual accountings, respectively as trustee and as executor, on McLean, and her final accounting in April 1993, as executor, on McLean and J. Frost Merriott, who succeeded her in January 1993 as the trustee of *922 McLean's spendthrift trust. Merriott, as trustee, opposed payment of the $90,000 balance of the executor's fee in the trial court and appears here as appellee.
Mrs. Obering contends the 1992 judgment that fixed the amount of her executor's fee bars relitigation of that issue. Alternatively, she contends she is statutorily entitled to at least $120,000 under CCP Art. 3351, which sets the minimum fee of a succession representative at 2½ percent of the gross estate. Her collateral complaint is that the trial court denied her request in the final accounting to pay "such amounts as become due to [the succession's attorney and accountant] at their customary rates" for services rendered on the succession's behalf after January 31, 1993.
At the hearing on this request, held in July 1993, Mrs. Obering did not appear. We have no evidence of the time or work expended for the succession by the attorney and the CPA after January 31, 1993, or of their respective customary hourly charge for work. McLean's trustee has no general opposition to the payment of reasonable attorney and accountant fees incurred on behalf of the succession, but argues simply that the specific amount of the fees claimed by Obering should be proved.
Before resigning as trustee of the McLean Trust, and anticipating that she would have difficulty securing trust funds with which to pay succession debts after her tenure as trustee ended, Mrs. Obering transferred over $60,000 in funds belonging to the trust to a succession bank account. She apparently did this to make the funds inaccessible to the successor trustee, and to create a reserve for paying the trust's share of the debts and charges for closing the succession, including the executor, attorney and accountant fees at issue in this appeal.
When Mrs. Obering filed her final accounting as executor, she asserted that she still held about $56,000 in trust funds and sought court approval to retain these funds to pay the trust's share of the outstanding debts and charges, which share, by her calculations, totaled about $69,000. Merriott claimed the trust's share of the debts was considerably less than $56,000 and sought an order requiring Mrs. Obering to return the trust funds in her possession to him.
After finding that the trust owed only about $24,000 toward the outstanding succession debts, the trial court authorized Mrs. Obering to retain this amount in the succession bank account and ordered her to deliver the balance of the trust funds in that account to Merriott. In the event this court determines that the various fees awarded by the trial court should be increased, Mrs. Obering seeks authority to use as much of the $56,000 as may be necessary to pay the trust's share of the fees.
In opposition to Mrs. Obering's request to pay herself the balance of the executor fee fixed by the October 1992 judgment, Merriott alleged that Mrs. Obering obtained that judgment by using her joint positions as executor and trustee to effectively wrongly coerce and prevent McLean, the trust beneficiary, from opposing her request for an executor fee in excess of the standard 2½ percent. Citing In re Liquidation of Canal Bank & Trust Co., 185 La. 34, 168 So. 485 (1936) and Succession of Marcour, 173 So. 587 (Orl.App.1937), Merriott asserted that a finding of fiduciary misconduct would allow the prior judgment to be revisited, even if the judgment would otherwise be deemed preclusive. Compare "ill practices," in CCP Art. 2004 and cases cited thereunder as grounds to nullify a judgment. See Homer Nat. Bank v. Nix, 566 So.2d 1071 (La.App. 2d Cir.1990), writ denied.
The trial court's ruling that the October 1992 judgment did not bar reconsideration of the amount of the executor fee was based solely on an erroneous interpretation of the law, which we shall discuss hereafter. The mixed question of law and factwhether the alleged fiduciary misconduct was of such magnitude that McLean was wrongly prevented from opposing the October 1992 judgmentwas not squarely addressed by the trial court.
If further evidence, pro and con, on the coercion issue does not allow the conclusion that McLean was wrongly coerced not to oppose the $150,000 executor fee, we are of the opinion that the 1992 judgment has preclusive *923 effect as to the amount of the fee. Moreover, we are of the opinion that CCP Arts. 3351 and 3351.1 mandate that the minimum executor fee which "shall be allowed" Obering, who is not an attorney, is 2½ percent of the gross value of the estate.
The trial court's conclusory comment that Obering unreasonably or unduly "delegated" some of her duties as executor to her attorneys and CPA's was not factually specific and was not made in the light of the obvious general duty of an executor of a million dollar estate to obtain competent counsel from an attorney and a CPA. On the face of the succession record filed in this appeal, at this juncture we find no factual or legal support for the trial court's "delegation" statement.
In any event, and in light of the clear provisions of CCP Arts. 3351 and 3351.1, discussed infra, the issue of Obering's alleged undue delegation of her duties may be addressed on remand only if the trial court finds that the preclusive effect of the October 1992 judgment has been vitiated by Obering's coercive conduct, and if Obering reasserts her claim for a fee in excess of the statutory minimum in the trial court.

FACTUAL BACKGROUND
Mrs. Mary Amanda McLean Obering, and her brother, Harvey D. McLean, Jr., are the children of Marjorie Palmer McLean, a widow who died testate on March 10, 1988, in Caddo Parish. Obering and McLean qualified as co-executors, as named in the will, five days later. After McLean formally resigned as co-executor on April 12, 1989, Obering was authorized and has since served as sole executor. More detailed facts than are here summarized may be found in two reported cases, each entitled Succession of McLean, 580 So.2d 935 (La.App. 2d Cir.1991), writ denied, and at 607 So.2d 918 (La.App. 2d Cir.1992).
McLean, a resident of Dallas, was named as trustee of his children's trust and as trustee of his spendthrift trust in his mother's will. He had not qualified in either capacity before he was placed in involuntary bankruptcy in Texas in January 1989 after a judgment had been rendered against him in favor of FSLIC for $38 million in November 1988. FSLIC later assigned to FDIC its interest in the judgment and the promissory notes underlying that judgment.
In March 1989 McLean formally declined his appointment as trustee of his trust, the McLean Trust, and formally accepted the trusteeship of his children's trust. In October 1989, Obering qualified as the trustee of the McLean Trust and thereafter appeared in the cases cited above.
Seeking to obtain for McLean's creditors the residuary bequest in trust to McLean, McLean's bankruptcy trustee unsuccessfully opposed Obering's rule to show cause filed in the succession proceedings in Caddo Parish to have the McLean Trust declared valid and to obtain authority, as executor, to partially fund the McLean trust. Two judgments of March 1, 1990, granting the relief sought by Obering, were affirmed by this court. 580 So.2d 935, writ denied, September 6, 1991.
In a second action asserted against the succession and the McLean Trust by McLean's judgment creditor-assignee, FDIC, in Caddo Parish, a declaratory judgment was sought to have McLean's beneficial interest in the McLean Trust declared subject to seizure by his creditors. On November 21, 1991, the trial court sustained the exception of res judicata. We affirmed that judgment on October 28, 1992. 607 So.2d 918.
In each of the two mentioned cases Obering was represented either or both individually, and in her capacity as executor, by a Shreveport attorney, and in her capacity as trustee of the McLean Trust, by New Orleans attorneys.
Much of Mrs. McLean's estate consisted of oil and gas holdings in several states, which generated considerable revenues and expenses for the estate, and of shares of corporate stocks. Obering and McLean served as co-executors of the estate from March 1988 until April 1989, when McLean resigned. Thereafter Obering served as sole executor, managing the succession assets for several more years, while the cases mentioned above were progressing through the courts.
*924 One-half of the $60,000 advanced on Obering's fee as executor, was approved in July 1989. The other one-half was approved in November 1989. The trial court denied Obering's request for an additional $30,000 advance in 1991.
On September 22, 1992, Obering filed her fourth annual accounting as executor and petitioned to have her fee fixed at $150,000, subject to the $60,000 credit, "the remaining $90,000 [to be paid] upon the homologation of her final account ..." Obering served notice on McLean, the trust beneficiary (she then being the trustee of that trust), on McLean's bankruptcy trustee, and on the judgment creditor-assignee, FDIC, none of whom filed an opposition or appeared at the hearing on her petition.
On October 13, 1992, the trial court rendered a judgment approving the fourth annual account and ordering that
The commission to be paid Mary Amanda McLean Obering for serving as executrix of this succession shall be and it is hereby fixed at $150,000.00, which amount shall be subject to a credit of $60,000.00 which has previously been paid, and the remaining $90,000.00 due on said commission shall be paid to ... Obering upon the homologation of her final account as executrix herein[.]
None of the parties who had been served sought a new trial, an appeal or the nullification of that October 13, 1992, judgment which became definitive.
In January 1993, Obering sent to McLean her proposed final succession account, which included the $90,000 payment to her as the balance of her executor fee as fixed in the October 13, 1992, judgment.
On January 23, 1993, McLean signed a document in authentic form approving the proposed account in most respects but objecting to payment of the $90,000 balance to Obering. McLean consented to paying a balance of only about $60,000, with half coming from his trust funds. This figure represents the amount necessary to bring Obering's total fee to about $120,000, or 2½ percent of the estate's gross value, the minimum amount of compensation to which an executor is statutorily entitled under CCP Art. 3351.[1]
Obering resigned as trustee of the McLean Trust on January 27, 1993, four days after McLean signed the authentic act above mentioned. Attaching a copy of that authentic act, Obering filed her petition to homologate her final succession account on April 16, 1993. That petition also sought authority for the succession to pay the $90,000 balance of her executor fee as fixed by the judgment of October 13, 1992.
Merriott, who by then had succeeded Obering as trustee of the McLean Trust, and had been served with Obering's April 1993 petition, opposed the petition on several grounds. Obering filed various exceptions to Merriott's opposition. Merriott abandoned most of his opposition to the final account at the hearing in the trial court but prevailed on the two issues he did not abandon: the amount of Obering's fee as executor and Obering's duty to deliver the trust funds being held in a succession bank account to Merriott, the successor trustee.
Obering appeals the adverse rulings on those issues, as well as the trial court's implicit rejection of her request for authority to pay attorney and accountant fees incurred by the succession after January 31, 1993.
The trial court found that the 1992 judgment, which was rendered when the court approved the fourth annual account, did not bar reconsideration of the amount of Obering's fee, reasoning that CCP Arts. 3337, 3351 and "the general scheme of articles in *925 this section" of the CCP allowed reconsideration.
Art. 3337 states that a judgment homologating any account other than a final account "shall be prima facie evidence of the correctness of the account," and that a judgment homologating a final account "has the same effect as a final judgment in an ordinary action." Art. 3351 states that the compensation of a succession representative "shall be due upon the homologation of the final account." The trial court did not discuss or specifically cite CCP Art. 3351.1B, which allows an executor's fee to be reduced by the amount of his or her compensation as the succession's attorney if the same person serves in both capacities.
The court limited Obering's fee to the $60,000 in advances she had already received, on findings that she delegated most of her duties to the succession's attorney and CPA, whose fees were also being paid by the succession. The court described the legal and accounting work as "splendid," but said there was no evidence "of any substantive work done by ... Obering." The court did not mention that part of McLean's authentic act quoted in fn. 1 of this opinion.
STATUTORY EXECUTOR'S FEE
CCP Art. 3351 provides in part:
In the absence of a provision in the testament or an agreement between the parties, the ... executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual compensation is inadequate. * * *
The compensation of a succession representative shall be due upon the homologation of his final account. The court may allow an ... executor an advance upon his compensation at any time during the administration. Our emphasis.
There is no provision in the testament or in an agreement of the parties negating the statutory minimum fee. The word "due" in the penultimate sentence of the last quoted part of the statute means "payable," in our opinion.

PRECLUSIVE EFFECT OF PRIOR JUDGMENT; THE CCP DISTINCTION
The October 13, 1992, judgment grants to a succession representative two types of relief that are contemplated by the Code of Civil Procedure: 1) approval or homologation of the fourth annual succession account, and 2) authority to pay a debt or charge of the succession, namely, the $150,000 executor fee, subject to a credit for the $60,000 in advances, upon homologation of the final account. The portion of the 1992 judgment approving the fourth annual account is not at issue in this appeal.
The CCP articles applicable to interim and final succession accountsArts. 3331-3338appear in Chapter 9, Title III, Book 6. Payment of succession debts and charges, which are to be listed on a "tableau of distribution," is regulated by articles in a different chapter of the same book and title. See and compare Arts. 3301-3308, Chapter 7. The trial court did not note this distinction.
The trial court relied in part on CCP Art. 3337, which appears in Chapter 9 dealing with interim and final accounts, to determine the preclusive effect of the portion of the judgment fixing the amount of the executor fee. Art. 3337 equates a judgment homologating a final account with "a final judgment in an ordinary action," but gives only a prima facie presumption of correctness to a judgment homologating an interim account. The trial court apparently concluded that the October 1992 judgment fixing the executor fee was interim or interlocutory in nature, not immediately appealable, and therefore was not a bar to relitigation of the fee issue even though the new trial and appeal delays expired without a request for modification of that judgment. See generally CCP Arts. 1841, 1971 et seq., 2081 et seq.
In our view, a judgment fixing the amount of an executor's fee to be paid on the homologation of the final accounting, as a charge or debt of the succession, is not one approving an interim (interlocutory) accounting. Such a judgment is more in the nature *926 of one that approves a final accounting, even under CCP Art. 3337. Moreover, such a judgment is akin to one that homologates a tableau of distribution. By the express wording of CCP Art. 3308, a judgment homologating a tableau of distribution is appealable, but only suspensively:
Only a suspensive appeal as provided in Article 2123 shall be allowed from a judgment homologating a tableau of distribution. The appeal bond shall comply with Article 2124.
The succession representative shall retain a sum sufficient to pay the amount in dispute on appeal until a definitive judgment is rendered. He shall distribute the remainder among the creditors whose claims have been approved and are not in dispute on appeal. Our emphasis.
Art. 3308 makes no distinction between "interim" and "final" tableaus of distribution.
The clear import of Arts. 3308 and 3337 is that a judgment approving the amount of a specific succession debt or charge to be paid on homologation of the final accounting, is immediately appealable and, like other appealable judgments, becomes "final," definitive and has preclusive effect when the new trial and appeal delays expire without a timely request for modification having been made. CCP Arts. 1974, 2083, 2123; LRS 13:4231. Thereafter, the judgment generally may be substantively modified only by an action to annul for a vice of form or of substance, in accordance with CCP Arts. 2001-2006. Compare State v. Wilmore, 624 So.2d 30 (La.App. 2d Cir.1993), writ not considered, and Louisiana Health Service & Indem. Co. v. Cole, 418 So.2d 1357 (La.App. 2d Cir.1982).
An exception to the general rule has long been recognized, however, in succession proceedings, when the judgment that would otherwise be deemed to have preclusive effect has been obtained by the succession representative through a breach of her fiduciary duty. Compare Succession of Marcour, cited supra, where fiduciary misconduct was shown, with other cases where similar allegations, such as fraud, misfeasance or waste, were not made. See, e.g., Canal Bank, supra; Succession of Allen, 49 La. Ann. 1096, 22 So. 319 (1897); Succession of Faust, 189 La. 417, 179 So. 583 (1938); and Succession of Spyker, 159 So. 347 (Orl.App.1935).
In Allen, Faust and Spyker, cited above, the judgment approving the payment of specific succession debts and charges during the administration of the estate, rendered without opposition and after proper notice to the heirs, legatees and creditors, was found to have preclusive effect in the face of subsequent opposition to the court-authorized payments, where no fiduciary misconduct surrounding the prior judgment was alleged. The dispute in Faust concerned the executrix fee. Allen and Spyker concerned property tax disputes.
Although styled as a bank liquidation proceeding, Canal Bank involved succession issues. Before becoming insolvent, the Canal Bank & Trust Co. served as executor of an estate, the assets of which were in a testamentary trust. During some, but not all, of its tenure as executor, the bank also served as trustee of the trust. In its final account as executor, which was homologated without opposition, the bank claimed a commission, as trustee, on income collected while the bank was serving as executor, but before it became trustee. The successor trustee, Whitney National Bank, intervened in Canal Bank's liquidation proceedings, seeking to recover the unearned trustee's commission. The supreme court stated:
Plaintiff is here seeking to collect from the liquidating representative of the trustee bank the amount alleged to have been illegally paid to it under the judgment of the court approving the account. There is no charge of fraud, misfeasance, or waste. Apparently, the claim was proved to the satisfaction of the trial judge. An injustice may have resulted to the beneficiary of the trust, but the protest against payment of the alleged illegal claim was not timely filed. The plea of res adjudicata is well founded and was properly sustained. 168 So. at 487; our emphasis.
On different facts, however, the legal result may change. In Marcour, cited supra, the provisional account and tableau of distribution *927 listed the administratrix's commission and an attorney's fee as succession debts. The heir who failed to opposed the provisional account was allowed to attack the judgment of homologation of that account on allegations and proof that the administratrix was guilty of misfeasance because she attempted to collect her commission while her right to serve as administratrix was being litigated. Marcour, an appellate court decision, cites Canal Bank, which was decided by the supreme court a year earlier.
In its reasons for judgment on McLean's opposition to Obering's executor fee, the trial court cited only the Code of Civil Procedure as the basis for its ruling that reconsideration of the fee amount was not barred by the October 1992 judgment. Although Canal Bank and Marcour predate the Code of Civil Procedure, we do not find those cases inconsistent with the scheme of the CCP.
Among the specific CCP articles cited by the trial court was Art. 3351, which provides that the succession representative's compensation, exclusive of court-approved advances, "shall be due upon the homologation of [the] final account." The trial court apparently regarded the October 1992 judgment, which fixed the amount of the executor fee before the final account was filed, as premature, notwithstanding the judgment's pronouncement that the fee balance remaining after allowance for advances "shall be paid ... upon homologation of the final account..." In the absence of fraud, duress, coercion or collusion, we see nothing in the CCP that prohibits the procedure of which the successor trustee complains.
In our view, Art. 3351 bars only the payment of the fee, less the court-approved advances, and not the fixing of the fee amount, before the final account is filed, unless, of course, either timely opposition to fixing the amount of the fee at that juncture is asserted, or fiduciary misconduct is later urged and proved when court approval or homologation of the final account is sought. See authorities cited supra.

ALLEGATIONS OF FIDUCIARY MISCONDUCT
In his opposition to Obering's request to pay herself the $90,000 balance of the executor fee, as fixed by the October 1992 judgment, Merriott, the successor trustee, alleged, as one of several reasons why the court should not be bound by the prior judgment, that Obering had conflicting interests when that judgment was rendered, then serving as both the executor requesting the fee and as trustee of her brother's spendthrift trust, whose funds would ultimately be used to pay half of the executor fee. Merriott alleged, and McLean testified at the hearing, that Obering's New Orleans attorney who represented her in her capacity as trustee, told McLean that Obering "would see that [McLean] never received a dime" from his trust if he opposed any of her actions as executor, including the fixing of the amount of the total executor fee at $150,000 in 1992, before she resigned as trustee and before she filed her final account as executor in 1993.
According to McLean, the New Orleans attorney told him Obering "had a legal right," as trustee of his spendthrift trust, to control the distribution of trust assets to him. See generally LRS 9:1725(7), 2002, 2007. Merriott's contention, in the trial court and here, is that a trustee must exercise her legal rights with respect to the beneficiary solely in the beneficiary's interest, and not to further her own interest at the beneficiary's expense. See §§ 2082, 2083 and Succession of Simpson, 311 So.2d 67 (La.App. 2d Cir. 1975), writ denied.
Neither Obering nor her New Orleans attorney was present or testified at the hearing.

TRIAL COURT'S RULING
In reasons for judgment the trial court stated:
Opposition to the [$150,000 executor] fee was asserted on the grounds of "neglect, mismanagement, waste and nonfeasance."
There are several preliminary matters which require comment.... [A]n issue has been raised regarding a previous Judgment fixing the executor fee at $150,000.00. After a review of [CCP] Articles 3337, 3351 and the general scheme of Articles *928 in this section of the La.Code of Civil Procedure, it is the view of this Court that any previous Judgment(s) on this point do(es) not prevent [Merriott's] opposition from being addressed ...
The cited CCP articles, which we have discussed, deal generally with succession accounts and executor compensation, without purporting to address the effect of fiduciary misconduct, if proved, on the general principles stated. The trial court made no factual finding, explicitly or implicitly, on the issue of fiduciary misconduct which may vitiate the otherwise preclusive effect of the October 1992 judgment.
Turning to the merits of the opposition, the court limited Obering's fee to the $60,000 she had received in advances. The court found that Obering had delegated most of her administrative duties to attorneys and accountants, whose work the court described as "splendid," and that she was entitled to compensation "only for actual services rendered" as executor, so that the succession would not have to "pay twice for the same services."

MINIMUM FEE ISSUES
As we have noted, executors of million dollar estates are obligated to obtain competent advice from attorneys and accountants. CCP Art. 3351 unequivocally states that the executor "shall be allowed" compensation in the amount of 2½ percent of the gross estate, or in a greater amount if warranted, unless a lesser fee is established either by testament or by agreement of the parties. The legislature has also provided that reduction of the executor fee below 2½ percent, on the basis that the estate is also paying attorney fees, is allowed only in the limited circumstance where "the succession representative serves as an attorney for the succession or for the succession representative." Art. 3351.1 B.
Obering is not, and has not appeared as, an attorney. None of the attorneys who assisted her in administering the estate has ever appeared in the proceedings as a succession representative. There is no testamentary or contractual provision negating Obering's statutory entitlement to a fee of at least 2½ percent of the gross estate. As we construe Arts. 3351 and 3351.1 B together, Obering's fee may not be reduced on remand below 2½ percent even if the October 1992 judgment awarding her a fee of over 3 percent of the gross estate is found, on remand, not to have preclusive effect because of fiduciary misconduct or coercive practices.

ATTORNEY & ACCOUNTANT FEES AFTER 1/31/93
In her April 1993 petition to homologate the final succession account, Obering sought court approval to pay about $25,000 in attorney fees and $11,400 in accountant fees incurred through January 31, 1993, a few days after Obering resigned as trustee of the McLean Trust. These fees, which represent a small fraction of the total attorney and accountant fees incurred by the succession from 1988-1992 (about $414,000 and $83,000, respectively), were apparently incurred between the filing of the fourth annual succession account in 1992 and January 31, 1993.
In the April 1993 petition Obering also sought authority "to pay such amounts as become due to [the succession's Shreveport attorney and the CPA firm] at their customary rates for such services as they render and advances as they make subsequent to January 31, 1993 ..." Notwithstanding that the hearing on this request was not held until July 16, 1993, we have no evidence of the time spent, work done or hourly rates charged by the attorney and the accountants for the succession since January 31, 1993.
Merriott initially opposed Obering's request to pay any additional attorney and accountant fees, regardless of when they were incurred, on allegations that the professional services were unnecessary and the fees were excessive. At the July 1993 hearing, however, Merriott's attorney stated, "... we are waiving all opposition [to] the payment of [the attorney] fees, the payment of the [accountant] fees ..."
Construing the waiver as encompassing only the fees which were quantified in Obering's petition, the trial court authorized Obering to pay the fees incurred before January 31, 1993, in the specific amounts shown in her *929 petition. The judgment is silent with respect to the fees incurred thereafter.
Obering seeks to have the judgment amended to authorize her to pay the fees incurred after January 31, 1993, "at the customary rates" charged by the succession's attorney and accountant. Obering claims Merriott's attorney "judicially confessed" her entitlement to this relief by his unqualified waiver of opposition to "the payment of [the attorney and accountant] fees" she requested in her petition. We do not agree.
From our reading of the record, it is unclear whether Merriott's attorney intended the waiver of opposition to include the professional fees incurred after January 31, 1993, as to which no specific amounts were alleged or proved, or whether the waiver was limited to the fees incurred before that date, the exact amount of which was alleged in Obering's petition. Because the record is unclear, we cannot say the trial court was unreasonable in construing the waiver as encompassing only the fees that were quantified.
In any event, the reasonableness of an attorney fee award is always subject to court scrutiny even where the parties have agreed to a fixed fee in an attempt to avoid litigation as to the fee amount. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982); Ruston State Bank & Trust v. Streeter, 545 So.2d 1255 (La.App. 2d Cir.1989). When an award of attorney fees in some amount is or may be warranted but the record does not contain all available evidence from which the appellate court may determine what amount is reasonable, we may remand for the taking of additional evidence, in the interest of justice. CCP Art. 2164; Streeter, supra.
Merriott has no general opposition to Obering's payment of reasonable attorney and accountant fees incurred in administering the succession. Such fees, in reasonable amounts, are clearly legitimate succession debts. The succession representative who seeks court approval to pay such fees must, however, meet a threshold burden of establishing the basis and amount of the fees, just as she would be required to do to obtain court approval to pay other debts or charges of the succession. See CCP Arts. 3301-3308.
On remand, Obering may establish, by stipulation or otherwise, the basis and amount of the attorney and accountant fees incurred after January 31, 1993, subject to the trial court's review for reasonableness. The McLean Trust, of course, will owe its share of these fees.

DECREE
Reversing the judgment at this juncture, we remand for a hearing at which the litigants will be allowed to offer evidence on the limited issues we have framed. Costs of this appeal are to be assessed by the trial court in accordance with the trial court's disposition on remand.
REVERSED AND REMANDED.
HIGHTOWER, J., concurs in the remand, although I am not in accord with much of the discussion concerning preclusive effect, and instead, find myself more in agreement with the trial court's legal conclusion that the October 1992 judgment has only prima facie validity as to the fee amount.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, BROWN and WILLIAMS, JJ., and GUIDRY, J. Pro Tem.
Rehearing denied.
NOTES
[1] Part 5 of the authentic act reads in part:

[McLean] approves the granting of all relief prayed for in the proposed petition designated Exhibit A and the making of all payments and transfers of funds referred to therein, except only authorizing Mary Amanda McLean Obering to pay "$90,000.00 balance to be due Obering as Executrix, the Trust's share thereof being $45,000.00" and the transfer by Mary Amanda McLean Obering to the account of Succession of Marjorie Palmer McLean from funds of the Harvey D. McLean, Jr., Trust of $45,000.00 for such purpose, but does consent to and does hereby authorize Mary Amanda McLean Obering to pay $59,091.00 balance to be due Obering as Executrix, the Trust's share thereof being $29,545.50, and to transfer to the account of Succession of Marjorie Palmer McLean from funds in the Harvey D. McLean, Jr., Trust $29,545.50 for such purpose. Our emphasis.